## 66627. HOPKINS v. THE STATE.

DEEN, Presiding Judge.

In March 1982 a Pinto automobile driven by Mr. Garrett and occupied by his wife and three-year-old daughter was struck from the rear by another vehicle and precipitated into the opposite, northbound lane of the two-lane highway, where it was struck a second time by an oncoming car. Garrett was killed instantly, and his wife died within the hour. Appellant's automobile was found resting against the guardrail in the southbound lane at a point south of the site of the two wrecked automobiles; his headlight covers were jammed in a closed position, and a heavy odor of alcohol emanated from his person. Analysis of blood drawn from appellant approximately two hours after the incident showed a blood alcohol content of between .19 and .21 percent, or approximately twice the legal standard for intoxication. Appellant was charged with two counts of first-degree vehicular homicide and one count of driving under the influence. This last was subsequently merged with the two felony counts.

A Mr. Ward, driver of the northbound vehicle which had struck the second blow to the Pinto, testified at trial that his first inkling of coming trouble was the sight of the Pinto "spinning out" into his

path. He further testified that he was beginning to apply brakes in order to stop before hitting the Pinto, when another vehicle struck the left side of his car, causing the windshield to shatter and throwing the car into an uncontrollable slide squarely into the right side of the Pinto. Ward could not positively identify as appellant's car the vehicle that had hit him, and could not say whether it was appellant's car that had caused the Pinto to spin out of control.

Another witness, who came upon the scene via the southbound lane only seconds after the collisions, testified that, just moments before, an unlighted automobile of the same color as appellant's and bearing the same license plate number had come from behind him at high speed, blowing its horn repeatedly, and had proceeded to pass and pull away from him, weaving from side to side but still at high speed. When he arrived at the scene this witness checked for injuries and asked a passerby to notify police and emergency services.

Law enforcement officers who arrived at the scene within seven minutes of being summoned noted the relative positions of the vehicles and debris and took paint samples from all three vehicles and from the guardrail against which appellant's car was found. The trial testimony of these officers and of experts in various forensic sciences was consistent with the theory that appellant had struck the Pinto from behind at high speed, knocking it into the northbound lane; that appellant's car had then crossed the center line and struck Ward's car in the left side and had ricocheted into the southbound guardrail and slid along it to a stop; and that Ward's car had been halted by the impact of striking the Garrett car broadside. There was expert testimony that the paint samples tested came from the three vehicles involved in the collision; that the location of each sample was consistent with the theory outlined above; and that appellant's jammed-shut headlight covers indicated that the headlights had not been turned on at the time of the crash.

Appellant admitted at trial that shortly before the collision he had consumed some beer and at least a half-pint of gin. He denied that he had struck the Pinto and insisted that an unidentified vehicle had hit first his own car and then the Pinto, forcing both out of the southbound lane. He could not describe the other car and offered no evidence to corroborate its existence.

Defense counsel offered a transcript of the preliminary hearing both for the purpose of impeaching the testimony of Deputy Hatfield, the junior investigating officer, and as substantive evidence that there was found on the southbound lane of the highway, at the point where appellant allegedly struck Garrett, no dirt such as ordinarily is dislodged from beneath the fenders and undersides of vehicles when struck with force. The trial court ruled that this prior

and allegedly inconsistent statement was admissible for impeachment purposes only and not as substantive evidence of point of impact. Defense counsel objected to this ruling. The parties stipulated that Mr. and Mrs. Garrett's deaths resulted from the collisions.

A Richmond County jury found appellant guilty on all counts, and he received two consecutive five-year sentences, half to be served in confinement and half on probation. On appeal he enumerates three errors focusing upon the court's ruling that witness Hatfield's allegedly inconsistent prior statement was not admissible as substantive evidence, and the jury instructions regarding the use of this evidence for impeachment. *Held:*

1. As appellant contends and the state concedes, a prior inconsistent statement made by a witness who testifies at trial and is subject to cross-examination is admissible not only for impeachment purposes but as substantive evidence as well. *Gibbons v. State,* 248 Ga. 858, 862 (286 SE2d 717) (1982). If the statement of Deputy Hatfield which the defense attempted to introduce was indeed inconsistent with his trial testimony, then each of appellant's three enumerations would be meritorious, and the trial court would be held to have erred in each of the respects alleged. The trial court's rulings having thus been held erroneous, this court would then be faced with the task of determining whether appellant had shown that any of the errors was harmful in view of the overwhelming circumstantial evidence — not only physical evidence but the observations and opinions of experienced law enforcement officers and forensic scientists — pointing to appellant's guilt of the offense charged. *Dill v. State,* 222 Ga. 793, 794 (152 SE2d 741) (1966); *Puckett v. State,* 163 Ga. App. 156, 157 (293 SE2d 544) (1982).

Close scrutiny of the trial transcript, however, discloses that the seeming inconsistency between Hatfield's two statements is more apparent than real. During the trial Hatfield testified in response to a question propounded by defense counsel regarding the presence of debris at the point where appellant allegedly struck the Pinto, "To the best of my knowledge, there wasn't too awfully much debris in the southbound lane other than, I would say, dirt from the underside of the vehicle." Defense counsel then asked, "Anything else?," to which Hatfield replied, "To my knowledge, nothing else that I can recall." Defense counsel then called the witness' attention to a series of questions and answers from the transcript of the preliminary hearing:

"Q. Was there any debris at all found in the southbound lane?

"A. There was debris from where it had been strewed from the northbound lane into the southbound lane, broken glass, parts of windshield moldings and headlight assemblies.

"Q. Did you look in the southbound lane for debris?

"A. Yes, sir.

"Q. And that's all you found?

"A. Yes, sir."

The disputed point is whether or not Hatfield saw dirt in the road at the point where the Pinto was first hit. The context of the witness' testimony at the preliminary hearing, supra, makes it clear that in indicating an absence of debris in the southbound lane, he was thinking of "debris" in the sense of such man-made items as shattered glass and detached parts or accessories, rather than dirt that might have been dislodged from beneath the cars. The challenged trial testimony, given after the passage of time and the concomitant obscuring of remembered details, was "[T]here wasn't *too awfully much* debris in the southbound lane," (emphasis supplied), followed immediately by the apparent afterthought, "I would say dirt from the underside of the vehicle." When allowance is made for the dimming of memory and the witness' colloquial mode of expression, it is plain that the trial testimony regarding the presence of dirt in the road differed from the prior statement more in degree than in kind. "Whether [an] inconsistency actually exists should be determined not from single or isolated answers, but from the testimony of the witness as a whole . . .; a witness is [not] to be discredited by a variance in slight particulars between his testimony and his previous statement where there is no *material* inconsistency or contradiction." (Emphasis supplied.) 98 CJS, Witnesses, § 583, p. 558 et seq. Proof of a different but not inconsistent statement would not suffice to raise an issue either as to impeachment or as to substantive use. Id. See also *Hodo v. Jenkins,* 209 Ga. 4 (70 SE2d 452) (1952); *Berry v. Dinsmore,* 115 Ga. App. 256 (154 SE2d 653) (1967); *Travelers Ins. Co. v. Bailey,* 76 Ga. App. 698 (47 SE2d 103) (1948).

Moreover, examination of the trial transcript reveals unmistakably that at one point during the testimony of Investigator Goodman, senior investigating officer on the scene, the witness obviously was speaking of one portion of the accident site while defense counsel was alluding to another. The discrepancy was recognized and resolved, and the testimony corrected. It may well be that a similar confusion was a factor in producing the alleged discrepancy in Hatfield's testimony.

We hold that there was no material discrepancy between the trial testimony and the prior statements, and that, accordingly, there was no error on the part of the trial court.

2. Even if, *arguendo,* the challenged ruling constituted error, it was not such as to demand reversal of the conviction. In the instant

case the substantive effect of the challenged testimony, if it had been properly admitted as substantive evidence, of course would have been germane to the threshold question of whether it was appellant's car that had struck the Pinto, setting off the entire chain of events that resulted in the Garretts' deaths. In this sense the alleged discrepancy would have been of material significance. In the context of the totality of the other evidence adduced, however, the alleged error can be seen as of much lesser magnitude than it would appear to be if viewed in the abstract. All the circumstantial evidence points to the conclusion that it was appellant's car which struck the Pinto: the appellant's blood alcohol level and his admission at trial that he had been drinking gin and beer some time immediately prior to operating his vehicle; the testimony not only of the witness whose car appellant had passed immediately prior to the collisions, but also of appellant himself, that appellant was driving without headlights despite the near-darkness; the paint samples; appellant's failure to support or amplify his bare statement that another, unidentified vehicle had struck the Pinto and forced him into the guardrail; and the inherent unlikelihood that in so limited a space another vehicle could have struck in rapid succession, first appellant's car, then the Pinto, and, finally, Ward's car and emerged still mobile, unscathed, and un-observed.

It is well settled that circumstantial evidence can be sufficient to authorize. a finding of guilt beyond a reasonable doubt. *Turner v. State,* 151 Ga. App. 169 (259 SE2d 171) (1979). The appellate courts do not undertake to weigh such evidence but look only to see if there is sufficient competent evidence to support the verdict, when viewed in the light most favorable to the verdict. *Pierce v. State,* 243 Ga. 454 (254 SE2d 838) (1) (1979); *Laws v. State,* 153 Ga. App. 166 (264 SE2d 700) (1980). "The weight of the evidence and credibility of witnesses are matters to be determined by the jury." *Turner v. State,* supra at 170; *Armour v. State,* 154 Ga. App. 740 (270 SE2d 22) (1980).

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6 (Code Ann. § 38-109). "The term 'hypothesis' as used in [OCGA § 24-4-6 (Code Ann. § 38-109)] refers to such reasonable inferences as are ordinarily drawn by ordinary men in the light of their experience in everyday life; the Code section does not mean that the act might by bare possibility have been done by somebody else, but that the State should show to a moral certainty that it was the defendant's act." *Hunter v. State,* 91 Ga. App. 136, 138 (85 SE2d 90) (1954); cited in *McGee v. State,* 159 Ga. App. 763 (285 SE2d 224) (1981). See also *Wrisper v. State,* 193 Ga. 157 (17 SE2d

714) (1941).

In the instant case the ordinary person, in the light of his everyday experience, would be authorized to draw from the proven facts the inference that it was indeed the appellant's automobile which knocked the Garretts' Pinto into the opposite lane and then caromed off the guardrail into the Ward vehicle. In this perspective, the issues of whether or not the impact of the initial collision dislodged dirt from beneath either of the vehicles involved, and whether or not Hatfield, the junior investigating officer, correctly remembered whether he saw such dirt lying on the highway, pale into insignificance. Even if we were to hold that the trial court's rulings on the allegedly inconsistent statements were error, we find it " 'highly probable that the error did not contribute to the judgment.' " *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869) (1976).

*Judgment affirmed. Banke, J., concurs. Carley, J., concurs in Division 1 and in the judgment.*

DECIDED SEPTEMBER 8, 1983.

*Stanley C. House,* for appellant.

*Sam B. Sibley, Jr., District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.