## 76981. LYERLY v. PHILLIPS.
(373 SE2d 663)

BIRDSONG, Chief Judge.

Thi Hanh Phillips sued Nancy Lyerly for damages arising out of an auto collision. Lyerly counterclaimed. Each party at trial vigorously asserted that the other's vehicle had strayed into her lane. The jury awarded plaintiff Phillips $30,000 compensatory damages and $25,000 punitive damages against Nancy Lyerly, who was awarded nothing on her counterclaim. Lyerly asserts five errors. *Held*:

1. We reverse this verdict for the admission of certain hearsay, non-probative testimony implying or raising a question of criminal activity by Lyerly in obtaining prescription drugs illegally.

An alcohol blood test showed that two hours after the collision Lyerly's blood contained .10 grams percent alcohol. She testified she had earlier had one drink but that her driving ability was not im-

paired, and that the collision occurred when Phillips turned too widely out of a side road into Lyerly's lane.

At the time of this accident, August 2, 1986, Lyerly was wearing a back brace for injuries received in a January 1986 accident. She testified she suffered from a fractured vertebrae and arthritis as a result of that January accident, and had been prescribed Feldene for arthritis and Valium and Talwin for pain and inability to rest, but she testified she had that day taken no other drug than Feldene, in the morning.

There was no evidence of any drug content in Lyerly's body (except alcohol), nor does it appear she was tested for any. Neither the trooper nor the emergency room nurse who treated her and drew the blood for alcohol testing, nor anyone else, gave any evidence whatever that Lyerly appeared to be under the influence of any drug, other than the alcohol which was apparently evident only by smell. As to his observations of Lyerly's "actions," the trooper testified, "She was, I guess, in pain. She was disturbed. Just, I guess, more-or-less, you know, from the accident."

The trooper first to arrive at the scene testified Ms. Lyerly's car had run off the road and was turned over in a creek. He said he looked in her car and saw "several different bottles of medication"; he did not remember exactly how many.

At trial the plaintiff introduced as a witness a pharmacist who had started work at Scotty's Drugs in Royston after this accident. Plaintiff's counsel asked this pharmacist: "[D]id Bill Avant from the DEA [Drug Enforcement Agency] come to your drug store and confiscate some records?" The pharmacist said yes and identified the document just given to him as the receipt of drug records confiscated, which was given to him by the DEA agent. The pharmacist testified that (along with, apparently indiscriminately, the names and "drug records" of many other customers of Scotty's Drugs), this receipt listed "the prescription records for the Defendant, Nancy Lyerly."

Lyerly's attorney objected to the use of this document and cross-examined the pharmacist in an attempt to discover what it was about. The pharmacist admitted the DEA had "confiscated a whole bunch of records . . . they got everybody's records"; and that he had no knowledge of any of the prescriptions listed for Nancy Lyerly ever being improperly filled by himself or any other pharmacists at Scotty's. The trial court refused to admit the DEA agent's receipt but nevertheless full discussion of it was made in the jury's presence.

Plaintiff Phillips offered the receipt as a "business records" exception to the hearsay rule. See OCGA § 24-3-14. Lyerly questioned the probative value and relevancy of the receipt; and argued it was hearsay because the pharmacist did not prepare it and had no personal knowledge of the facts it purported to represent, and that this receipt prepared by a DEA agent of documents he allegedly confis-

cated in the course of an investigation concerning improperly filled prescriptions, was not a record prepared in the normal course of the pharmacy's business.

Plaintiff's attorney then elicited a recitation by the pharmacist from the DEA agent's receipt that prescriptions for 36 five-milligrams of Valium and Talwin had been dispensed for Lyerly. Lyerly's attorney objected repeatedly "to this line of questioning" as hearsay.

At a bench conference, the court inquired of Phillips' attorney: "What is the purpose of that paper [the receipt]?" Phillips' attorney merely responded he had alleged in his lawsuit and pre-trial order that Lyerly was under the influence of alcohol "and/or drugs," and that the pharmacist could not testify from his own knowledge because he did not work at Scotty's until after this collision, and he could not testify from his records because he had none, they having been confiscated by the DEA. The trial court stated it would allow the pharmacist to testify whether "their business records show, within a reasonable time of this incident, prescriptions"; the pharmacist could "refresh his memory" from the receipt left by the DEA agent, but was not allowed to tell the jury that it was based on the receipt.

The bench conference ended and trial resumed. Phillips' attorney asked the pharmacist, "referring to the business record you have in front of you, can you tell the jury whether there were any prescriptions?" Lyerly objected to this reference to a "business record"; seemingly the trial court agreed, but ruled the pharmacist could testify from "[t]he record in his hand." Lyerly's attorney objected to that record as a hearsay document. This objection was overruled and the pharmacist testified, from the "refreshing" paper in his hand, that Valium was dispensed in 1986 on eight occasions from February through June. He was "assuming" 36 tablets were dispensed with each refill, although "[t]he DEA didn't list next to the date exactly how many were dispensed on each refill." Lyerly objected "to assumption."

Ultimately, the trial court refused to admit the copy of the DEA's receipt for drug records confiscated.

This line of questioning concerning a receipt for records confiscated by the DEA and appellant's name being on a list of persons' records seized by law enforcement authorities for suspicion of obtaining prescription drugs illegally, was error. It was prejudicially harmful, and therefore requires reversal of the verdict. This error was not mitigated or eclipsed by the ultimate disallowance in physical evidence of the DEA agent's receipt for documents confiscated, for any line of questioning concerning *the contents* of the document was hearsay, non-probative, and prejudicial.

What the plaintiff's attorney was attempting to prove by having the pharmacist testify from the DEA agent's receipt of drug records

confiscated is not clear. If he sought to prove Lyerly had been prescribed and dispensed some medication two months before this collision, such fact alone does not tend to prove she was under the influence of them at the time of the collision. Even if it did, it was proved only by hearsay. The pharmacist testified that he had no knowledge at all, from any source, that any doctors listed had improperly written prescriptions; nor did he have knowledge that Nancy Lyerly abused the prescriptions in any way. The pharmacist could not testify from the hearsay document that Lyerly had been dispensed certain medication and he had no "memory" to be refreshed by it, because he was not there when the drugs were prescribed. He could only testify to what another person (the agent) said was in a record confiscated, a person who was not available for cross-examination. The DEA receipt was not a record prepared in the ordinary course of business of Scotty's Drugs; it was not something the pharmacist did, or knew was done, in a given transaction in accordance with the habits of the business. *Green v. State*, 165 Ga. App. 702 (302 SE2d 604). Preparing a receipt for drugs confiscated might be testified to by the DEA agent as routine in the course of the agent's business (see *Reed v. Heffernan*, 171 Ga. App. 83 (318 SE2d 700)); but it is no part of the pharmacist's normal business. As to the requirement of foundation for proof of business records as an exception to hearsay rules, see *Harris v. Collins*, 149 Ga. App. 638, 639-640 (255 SE2d 107).

Moreover, the pharmacist had no familarity with the receipt except as it was given to him. He could not even testify the receipt accurately reflected the records seized. It was someone else's record. He could not determine from it what doctor prescribed what medications, or how many pills were dispensed with each of Lyerly's refills. Thus the information was not merely hearsay; it was incomplete and therefore misleading as to fact.

But assuming everything to which the pharmacist testified from the drug agent's receipt was true, it still proved nothing concerning the event of collision. Its only value was prejudice, by raising the odor of criminality. Since the jury returned a large punitive damage award in addition to finding liability, the prejudicial error cannot be said to be harmless.

The trial court advised the jury to "disabuse your mind [from the pharmacist's assumption that 36 tablets were included with each refill] and don't consider it . . . in the least"; but this expressly refers only to a single factual assumption made by the pharmacist from the agent's "receipt," and not to the negative implications of the testimony generally. Another time, the court reminded the jury there was a discussion between the court and the attorneys "*concerning a document. That colloquy is not evidence*, you will not consider it as evidence and don't consider [it] in any way in your decision in this

case." But in this the court referred only to *the attorney's discussion concerning "a document,"* and not the evidentiary implications suggested by it; and while advising the jury not to consider *the colloquy* about the document, the trial court admitted the pharmacist's testimony from the document. (Emphasis supplied.)

The actual errors, which were the non-probative, hearsay, prejudicial implications arising from the verbal testimony of the pharmacist, were not in fact or by attempt removed from the jury's purview.

Although the trial court admittedly had serious trouble with this "document," it was the *testimony* about the document, the non-probative, hearsay testimony implying Lyerly was at the time of the collision under the influence of certain drugs, which was prejudicial error.

Moreover, the evidence implied that Lyerly had engaged in criminal activity in unlawfully obtaining drugs some two months before this collision, and this particular prejudice was completely uncured.

Certainly a judge may remove error by giving pertinent curative instructions, but it is foolhardy to suggest that every prejudicial error is cured by any curative instruction of some sort, for this would be to invite error. Clearly an error can be so prejudicial in nature that it cannot be cured; in spite of anything which may be said by the judges, some evidence will be so inherently harmful that the jury will draw conclusions from it. See *Newton Bros. v. Shank*, 240 Ga. 471, 472 (241 SE2d 231).

This testimony that the DEA had confiscated the defendant's drug records from the pharmacy raised the taint of criminality *in addition to* the attempt by pure speculation to prove that since the trooper saw pill bottles in her car, defendant was under the influence of drugs at the time of the collision. It cannot be said that the hearsay testimony in this case probably did not contribute to the verdict. The legitimate evidence of liability was disputed and did not demand a verdict for the plaintiff. For this reason the verdict is reversed.

2. Appellant's remaining enumerations of error are without merit.

*Judgment reversed. Banke, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 27, 1988.

*Richard B. Eason*, for appellant.
*James E. Cornwell, Jr., Andrew J. Hill III*, for appellee.