**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 2, 2024**

# In the Court of Appeals of Georgia

A24A0088. ALTINE v. EASTSIDE MEDICAL CENTER, LLC.

MARKLE, Judge.

After suffering complications from bariatric surgery, Philip Altine filed suit against the doctor who performed the surgery, and Eastside Medical Center, LLC. ("Eastside"), who employed the nurses treating Altine post surgery.[1] The doctor settled the claims against him and was dismissed from the suit. The negligence claims against Eastside proceeded to trial, and Eastside was allowed to proffer evidence that the doctor had settled. After an eight-day trial, the jury found in favor of Eastside. Altine now appeals, arguing that it was error to allow evidence of the doctor's settlement. For the reasons that follow, we affirm.

---

[1] Eastside stipulated that the nurses were employees.

A trial court's decision to admit evidence . . . will not be disturbed absent an abuse of discretion. An abuse of discretion occurs where the trial court's ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law. However, to be reversible error, it is not enough that the trial court erred; the plaintiffs also must show that the error had an effect on the outcome of the proceedings. Erroneous evidentiary rulings are subject to the harmless error doctrine, meaning we may not reverse a judgment because of such an error unless refusal to take such action appears to the court inconsistent with substantial justice. When we consider whether an error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so.

(Citations and punctuation omitted.) *Ross-Stubblefield v. Weakland*, 359 Ga. App. 523, 526-527 (859 SE2d 502) (2021); see also OCGA §§ 9-11-61; 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]").

So viewed, the evidence shows that Dr. Suraj Menachery performed Altine's bariatric surgery at Eastside in April 2016. During the surgery, Dr. Menachery accidentally injured the connective tissue, causing some bleeding, but he repaired the damage. Altine was taken to recovery, where he had good vital signs and stable blood pressure. About two hours later, however, Altine experienced a drop in blood pressure

and brief loss of consciousness. The nurses were able to revive him. Around 1:30 p.m., one of the nurses noted bloody drainage at the incision site, and she called Dr. Menachery to inform him of Altine's condition. Dr. Menachery ordered further lab work, medication to improve Altine's blood pressure, and a cardiology consultation. Although Dr. Menachery considered bleeding as a possible cause of the blood pressure concerns, he did not think it was the most likely cause of Altine's symptoms at that time.

Altine's blood pressure remained low throughout the afternoon, and his lab work was abnormal. Dr. Menachery ordered repeat blood work and awaited the results of the consultation. The cardiologist observed Altine around 2 p.m., concluding that there was no cardiac issue and recommending Altine be transferred to the ICU. In the ICU, doctors prepared to do a blood transfusion and repeated blood work. Altine did not improve, and, after speaking with the ICU physician, Dr. Menachery brought Altine back to surgery that evening, at which point he discovered that Altine was bleeding from the earlier injury. He repaired the damage, but due to the delay, Altine's kidneys were severely impaired and he lost vision in one eye.

Altine filed a medical malpractice suit against Dr. Menchary and Eastside. After settling his claims with Dr. Menachery, Altine moved to exclude any evidence of the settlement at Eastside's trial under OCGA § 24-4-408 (a). The trial court found that the fact that there was a settlement was admissible, but the parties could not introduce any evidence of the terms.

At trial, in his opening statement, Altine mentioned the settlement, informing the jury that he had originally sued the doctor, and the jury would decide what percentage of fault belonged to the doctor and what percentage belonged to the hospital.[2]

The jury heard Dr. Menachery's deposition testimony, in which he stated that he was in contact with the nurses throughout the afternoon post-surgery; they informed him of bleeding and oozing at the drainage site; he ordered medications,

___

[2] We note that Eastside's counsel mentioned the settlement in its closing argument and made comments that Dr. Menachery "had taken responsibility for his actions" and that Altine was seeking "a second bite at the apple." Although we do not condone counsel's remarks, we are mindful that Altine's counsel did not object, the statements were isolated comments during a lengthy closing argument, and Altine's counsel also mentioned the settlement in closing arguments. We cannot say that the comments in Eastside's closing argument were so problematic, on the facts of this case, as to render the admission of the evidence harmful. See *Thomas v. Alligood*, 358 Ga. App. 703, 715-716 (3) (d) (856 SE2d 80) (2021) (defense counsel's isolated improper statement in closing was harmless).

repeat blood work, and consultations to try to determine the cause of Altine's abnormal post-operative labwork and bleeding; and he ultimately determined another surgery was needed. He explained that he did not believe Altine was experiencing active bleeding that caused a hemorrhage when he spoke with nursing staff at 1:30 p.m. Nevertheless, he stated that, even if the nurses had informed him at that time that Altine was experiencing new bleeding, he would have made the same decisions in how he monitored and provided care to Altine.

One of the nurses testified that the nurses were monitoring Altine's condition, updating the doctor, and carrying out the doctor's orders throughout the day.[3] Another nurse confirmed that there was no bleeding until after Altine was moved from post-op to a room, but even at that point there was not a large amount of blood; and Dr. Menachery was informed of Altine's status, including his low blood pressure and the bloody drainage.[4] Importantly, the medical records reflect that the nurses

---

[3] Altine's counsel presented several of the nurses' testimony through the depositions.

[4] To the extent that the expert testified the nurses breached the standard of care by not calling Dr. Menachery when the blood pressure issue did not improve, the record reflects that Dr. Menachery was in contact with the nurses, was aware of the blood pressure, and had issued repeat blood work and other interventions.

informed Dr. Menachery of Altine's low blood pressure and bloody drainage at 1:30 p.m., and that Dr. Menachery gave orders for additional labwork, medications, and consultations. By 3 p.m., the cardiologist had determined that there was no cardiac issue, and Altine was then transferred to ICU, where, in consultation with Dr. Menachery, the medical staff prepared for a blood transfusion and further surgery.

Altine presented expert testimony regarding the nurses' conduct and causation. The nursing expert testified that he was critical of the nurses' conduct in treating Altine and their communication with Dr. Menachery during the 1:30 call, opining that they had breached the standard of care. He conceded, however, that if the nurses informed the doctor about the bloody drainage, the nurses' conduct would have met the standard of care. Altine's causation expert testified that bleeding was the cause of Altine's post-operative complications; the *doctor* should have recognized that immediately; and if the *doctor* had recognized that Altine was bleeding and performed the second surgery earlier, Altine would not have developed kidney failure requiring dialysis.

The jury then heard from Eastside's causation expert, who opined that the injury to the kidney could have been reversed had Dr. Menachery performed the

6

surgery earlier. He testified that the kidney damage was caused by shock from the hemorrhage and was exacerbated by Altine's pre-existing stage III chronic kidney disease and other health problems. But he did not attribute the cause of Altine's kidney injury to the nurses' conduct.

The parties stipulated that the doctor had resolved the claims against him, and the trial court read this stipulation to the jury. At Altine's request, the trial court also instructed the jury that[5]

> [i]f you determine that the defendant was negligent so as to be liable to the Plaintiff, you shall then consider the alleged negligence of non-party Suraj Menachery, MD. In that consideration, if you find that Dr. Menchary, was also negligent in some degree, thereby contributing to Plaintiff's injury and/or damages, then you are required to determine the percentage of Dr. Menachery's fault . . . You should not make any reduction in the amount of damages based on the negligence, if any, of Dr. Menachery. In determining whether Dr. Menachery departed from the standard of care, you may not consider the fact that he settled Plaintiff's claims against him. That fact that he has settled has no relevance to the issue of whether he departed from the standard of care.

---

[5] We may look to the jury instructions when we evaluate whether the erroneous admission of evidence was harmful. *Howell v. State*, 307 Ga. 865, 875 (3) (838 SE2d 839) (2020) (reviewing jury instructions in determining harmless error, because "[w]e ordinarily presume that jurors follow their instructions.").

7

The court also gave instructions on the standard of care and causation on the part of both the nurses and the doctor. And, the parties submitted a verdict form that included Dr. Menachery. Specifically, the form first asked the jury if it found in favor of the plaintiff or defendant. If the jury found for the plaintiff, it was then asked whether it also found the non-party doctor to be at fault, and if so, to allocate fault among the doctor and the hospital.

The jury found in Eastside's favor. Altine now appeals, arguing that the trial court erred by allowing the jury to hear that Dr. Menachery settled the claims against him. After a thorough review of the record, we conclude that any error in admitting evidence of the settlement was harmless.

Under OCGA § 24-4-408, evidence that a party has settled the claims against it is generally not admissible to establish liability, but may be admissible for another purpose, such as to show bias of a witness.[6] OCGA § 24-4-408 (a), (c). Here, Altine

---

[6] Eastside argued that the settlement was admissible to show bias, specifically changes to Dr. Menachery's deposition testimony given before and after the settlement. Whether a settlement is admissible for "other purposes" under OCGA § 24-4-408 (c) is currently pending before our Supreme Court. See *Whitaker Farms v. Fitzgerald Fruit Farms*, No. S23G1162 (oral argument held May 16, 2024). In light of our constitutional mandate to decide all cases within two terms of docketing, we cannot delay a resolution of that issue in the instant case until that Court has rendered an opinion. *Bridges v. Collins-Hooten*, 339 Ga. App. 756, 759 (1), n.5 (792 SE2d 721) (2016).

argues that there was no other basis that would allow the jury to hear of Dr. Menachery's settlement.

Pretermitting whether it was error to admit the fact that Dr. Menachery settled his claims, the admission of that evidence did not affect the verdict.

> The new Evidence Code continues Georgia's existing harmless error doctrine for erroneous evidentiary rulings. See OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.

(Citation omitted.) *Haskins v. Georgia Neurosurgical Inst., P.C.*, 355 Ga. App. 781, 783 (2) (845 SE2d 770) (2020).

Here, weighing the evidence recounted above as a reasonable juror would, Altine failed to establish that the nurses breached the standard of care regarding his bleeding, or that any of the nurses' actions caused his injuries. Given the overall strength of the evidence showing the doctor was the party who breached the standard

9

of care, it is highly probable that admission of the settlement had no effect on the jury's verdict in favor of Eastside.

This is especially true where, as here, there was a special verdict form, and the trial court gave detailed instructions to the jury that it could not consider the settlement in evaluating the nurses' standard of care.[7] See *Endsley v. Geotechnical & Environmental Consultants*, 339 Ga. App. 663, 679-680 (2) (794 SE2d 174) (2016) (improper admission of evidence was harmless where special verdict form showed that jury found in favor of defendant without consideration of collateral source); see also *Central Nat. Ins. Co. of Omaha v. Dixon*, 188 Ga. App. 680, 682-683 (4) (373 SE2d 849) (1988) (court's swift curative instruction after witness's testimony about offer to settle was sufficient, and mistrial not warranted); cf. *Pilzer v. Jones*, 242 Ga. App. 198, 202-203 (1), (2) (529 SE2d 205) (2000) (curative instruction following improper closing argument that patient's medical bills had been paid by collateral source was sufficient to cure taint because jury was not instructed on collateral source, and we

---

[7] Altine agreed that Dr. Menachery should be included on the verdict form, and he raised no objection to either the court's instructions or the special verdict form.

presume jury follows instructions);[8] compare *Allison v. Patel*, 211 Ga. App. 376, 382 (1), 383 (1) (b) (438 SE2d 920) (1993) (finding evidence of settlement harmful, noting that because of general verdict form "we do not know for certain whether the jury found defendant not liable because of lack of negligence or lack of proximate cause, or even whether it found him such but that plaintiff had been fully compensated" due to settlement).

Moreover, the evidence presented at trial called on the jury to evaluate the credibility of numerous expert witnesses and to weigh the testimony of each. In this respect, the experts agreed that the bleeding was the cause of the injuries and that performing surgery more quickly would have prevented or reversed the damage. But when to perform surgery was the *doctor's* decision. According to the medical evidence, Dr. Menachery was informed of the bloody drainage and Altine's abnormal blood pressure at 1:30, but even if the nurses had not given him that information, Dr.

---

[8] We find *Newton Brothers, Inc. v. Shank*, 240 Ga. 471 (241 SE2d 231) (1978), distinguishable. In that case, there was conflicting evidence, and the evidence of settlement raised inferences that affected the outcome. 240 Ga. at 471. For the reasons discussed above, we do not find the same risk present in this case. And although *Shank* found the evidence "inherently harmful," we have never applied that language to preclude a harmful error analysis in cases involving the admission of evidence of settlements.

Menachery testified that he would have made the same decisions regarding his treatment plan.[9] On this record, there was more than enough evidence for the jury to conclude that the nurses did not breach the standard of care or cause Altine's injuries, and thus there was no liability on the part of the hospital.

Accordingly, considering the evidence de novo, and weighing it as a reasonable juror would, it is highly probable that the evidence of the doctor's settlement did not contribute to the verdict here. We therefore affirm.

*Judgment affirmed. Land, J., concurs fully and specially. Miller, P. J., dissents.*

---

[9] Even if the jury found the doctor's testimony in this regard lacked credibility, the remaining evidence at trial overwhelmingly showed that the doctor was the one who breached the standard of care and that it was the doctor's conduct that caused Altine's kidney damage. Compare *Liu's Enterprises Corp. v. Li*, 204 Ga. App. 397, 398 (1) (419 SE2d 511) (1992) (improper admission of evidence was not harmless where credibility of parties was at issue, erroneously admitted evidence affected credibility, and the evidence supporting the jury's verdict was "slight.").

A24A0088. ALTINE v. EASTSIDE MEDICAL CENTER, LLC.

LAND, Judge, concurring fully and specially.

I fully concur with the majority opinion but write separately to note that I would go further and hold that the trial court did not abuse its discretion by admitting evidence of the doctor's settlement with Altine. I believe the trial judge had the discretion under the circumstances of this case to admit this evidence for the limited purpose of demonstrating the doctor's potential bias. Whether or not the doctor did in fact have a bias flowing from his settlement with Altine was an issue for the jury to decide (not us), and the jury was properly given the evidence that would enable it to make that assessment. For this reason, and because OCGA § 24-4-408 (c) expressly

allows evidence of a settlement to be admitted for this purpose, I would hold that the trial judge committed no error by admitting this evidence and then giving the jury a carefully crafted limiting instruction.

A24A0088. ALTINE v. EASTSIDE MEDICAL CENTER, LLC.

MILLER, Presiding Judge, dissenting.

I believe that the trial court erred by allowing evidence that Dr. Suraj Menachery settled with Philip Altine because it ultimately was admitted for the purpose of disputing liability, not attacking Dr. Menachery's credibility. I also believe that the error was not harmless in light of direct precedent from the Supreme Court of Georgia discussing the harm caused by improperly presenting settlement evidence before a jury and because the evidence in favor of Eastside and its nursing staff was not so overwhelming as to render the error harmless. I would therefore reverse the jury's verdict and remand for a new trial, and so I respectfully dissent from the majority's opinion.

2

The Georgia Evidence Code provides that "evidence of [a]ccepting . . . a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount shall not be admissible to prove liability for or invalidity of any claim or its amount." OCGA § 24-4-408 (a) (2). "The purpose of [this statute] is to encourage settlements and protect parties who freely engage in negotiations directed toward resolution of lawsuits." *Graves v. Graves*, 252 Ga. 27, 28 (1) (310 SE2d 901) (1984) (discussing OCGA § 24-4-408's predecessor statute). This provision, however, does not mandate the "exclusion of evidence offered for another purpose, including, but not limited to, proving bias or prejudice of a witness," OCGA § 24-4-408 (c), and so "by its terms, the rule forbids admission of evidence only when it is offered to prove liability for or invalidity of the claim or its amount[, and] evidence coming out of settlement negotiations is admissible for other purposes[.]" (Citations and punctuation omitted.) *Whitaker Farms, LLC*, supra, 368 Ga. App. at 566-567 (1) (a) (statements made during settlement negotiations were admissible for the purpose of determining the defendant's intent and state of mind). The "critical inquiry in the instant case, therefore, is for what purpose the [settlement] was admitted at trial." *McInnis v. A. M. F., Inc.*, 765 F2d 240, 248 (B) (1) (1st Cir. 1985).

Here, Eastside argued to the trial court that it sought to admit evidence that Dr. Menachery had settled with Altine for the purpose of impeaching his credibility by pointing out how his deposition testimony changed to be more damaging against a remaining non-settling defendant after he settled out of the case. Putting aside whether this is generally an acceptable purpose to admit into evidence the fact of settlement, here, I cannot discern any meaningful discrepancy between Dr. Menachery's testimony in his first deposition and his second deposition. To show that Dr. Menachery's testimony had changed following his settlement, Eastside points to his response during the second deposition wherein he testified that the nurses did not communicate to him that there was "new bleeding" during the 1:30 p.m. call and that he would have expected them to do so. Eastside argues that this statement conflicts with Dr. Menachery's testimony that he did not fault any of the nursing staff for failing to provide him with information. This statement, however, does not reflect a shift in Dr. Menachery's testimony or indicate that he developed a new prejudice or bias due to the settlement. The statement that Dr. Menachery made during the second deposition was in response to the testimony of a nurse that did not exist during his first deposition, and even then, Dr. Menachery testified during the second deposition

4

that the nursing staff still made him "fully aware" that Altine was experiencing bleeding and oozing from his surgical drain. Crucially, during both depositions, Dr. Menachery testified that, even with the information he knew after the fact, he would have treated Altine the same way. Thus, because Dr. Menachery's testimony is not materially different between his two depositions, the evidence that he settled with Altine in between those depositions does not impeach his credibility and is therefore not relevant and admissible for that purpose. I am therefore compelled to conclude that the trial court abused its discretion by allowing the fact of settlement into evidence. See *McInnis*, supra, 765 F2d at 248-251 (B) (1) (settlement agreement and release was not admissible when it was apparent from the record and the questioning at trial that the agreement was offered to show that the settled defendant had caused the accident at issue and was not offered into evidence merely to impeach the settled defendant's credibility).

Where I primarily differ from the majority is that I cannot conclude that any error in admitting evidence that Dr. Menachery had settled was harmless.[1] Although

---

[1] See *Haskins v. Ga. Neurosurgical Institute, P. C.*, 355 Ga. App. 781, 783 (2) (845 SE2d 770) (2020) (when determining whether a trial court's evidentiary error was harmless, "we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so. The test for determining nonconstitutional

5

the trial court gave the jury a carefully crafted limiting instruction, the Supreme Court of Georgia has cautioned that limiting instructions are not generally sufficient to blunt the unique harm caused by improperly admitting evidence of settlements. The Supreme Court has explained that

> [t]he rule against allowing evidence of compromise is founded upon recognition of the fact that such testimony is inherently harmful, for the jury will draw conclusions therefrom in spite of anything said by the parties at the time of discussing the compromise, and in spite of anything which may be said by the judge in instructing them as to the weight to be given such evidence.

(Citation omitted.) *Newton Bros., Inc. v. Shank*, 240 Ga. 471 (241 SE2d 231) (1978) (interpreting former OCGA § 24-3-37); see also *Lyerly v. Phillips*, 188 Ga. App. 566, 569 (1) (373 SE2d 663) (1988) (noting that "it is foolhardy to suggest that every prejudicial error is cured by any curative instruction of some sort . . . in spite of anything which may be said by the judges, some evidence will be so inherently harmful that the jury will draw conclusions from it.").

---

harmless error is whether it is highly probable that the error did not contribute to the verdict.") (citation omitted).

Furthermore, I cannot conclude that the evidence was overwhelmingly in favor of a defense verdict to the point that the evidentiary error was harmless. Altine's expert witness on causation testified that, to avoid the complications caused by the internal bleeding, Altine needed to be brought back to surgery by 4:30 p.m., several hours before he was actually brought back. And Altine's nursing expert found several problems with what was discussed with Dr. Menachery at the 1:30 p.m. call and found several problems that were not communicated later on or were communicated without the requisite level of urgency, particularly focusing on Altine's low blood pressure and the presence of bloody drainage. While it was Dr. Menachery's decision of when to bring Altine in for additional surgery, I believe a reasonable jury could have concluded that the decision could have been different but for these deficiencies.

Additionally, I note that both parties emphasized and extensively discussed the settlement during their closing arguments. During closing arguments, Eastside highlighted Dr. Menachery's settlement multiple times. Although Eastside argued that the settlement affected Dr. Menachery's credibility, Eastside also argued that Dr. Menachery "had taken responsibility for his decisions" and that Altine's suit against Eastside was "a second bite at the apple" and "a money grab." Eastside further

concluded its argument by telling the jury that "the person who took responsibility [for Altine's injuries], is taking responsibility and settled that case." These arguments clearly went beyond attempting to impeach Dr. Menachery's credibility and instead used the settlement in an attempt to argue that Dr. Menachery was the liable party *and not Eastside*, which is clearly using the settlement in an attempt to prove the "invalidity" of Altine's claim against Eastside. See OCGA § 24-4-408 (a) (2). For these reasons, I am also extremely skeptical of the majority's emphasis on the special verdict form because, in my view, Eastside's arguments clearly went beyond merely arguing for a favorable apportionment of fault but instead used the fact of settlement to argue for a finding of no liability.

Because I cannot conclude that it is "highly probable" that the introduction of evidence that Dr. Menachery had settled had no impact on the jury's verdict, I respectfully dissent from the majority's holding that any evidentiary error here was harmless.