A99A1585. KILBURN v. PATRICK.
(525 SE2d 108)

RUFFIN, Judge.

Steven Patrick sued Galen Kilburn, Jr., Kilburn Young Asset Management Corporation (KYAMC), Robert Young, and Donald Burton for conversion and breach of fiduciary duty stemming from the defendants' alleged conversion of shares of KYAMC stock that had been given to Patrick. After the trial court directed a verdict against Kilburn on the conversion claim, the jury found that defendants had breached their fiduciary duty and awarded punitive damages and attorney fees against Kilburn. Kilburn appeals, contending that the trial court erred in (1) directing a verdict on conversion; (2) permitting an award of punitive damages and attorney fees; (3) admitting prejudicial evidence; and (4) failing to give a requested jury charge. For reasons that follow, we reverse.

In August 1989, Kilburn hired Patrick to work for Galen Kilburn & Company (GKC), a real estate development company. Kilburn subsequently formed KYAMC with Robert Young. Corporate documents designated Kilburn as chairman, Young as president/chief executive officer, Patrick as vice-president, and Sandra Hutchenson, another employee of GKC, as secretary/treasurer.

KYAMC issued 10,040 shares of stock. Initially, the shares were divided between Kilburn and Young, but Kilburn later gave Patrick 437 shares.[1] Patrick signed a shareholder agreement, drafted by Kilburn's attorney, that provided,

3. *OTHER INTER VIVOS TRANSFERS (a) Right of First*

---

[1] Kilburn also gave Hutchenson 219 shares.

*Refusal and Redemption by Corporation.* (1) In the event that any Shareholder . . . *withdraws, resigns, or is terminated with or without cause by the Board of Directors from his employment by the Corporation,* then the other Majority Shareholder (if the event relates to a Majority Shareholder), or Kilburn (if the Event relates to a Minority Shareholder) . . . is hereby granted the option and right . . . to purchase from such Transferring Shareholder . . . all, but not less than all, of the Stock owned by such Transferring Shareholder prior to such Event. To the extent any such option is not exercised, the Corporation shall have the option to purchase such Transferring Shareholder's shares on the terms set forth herein.[2]

(Emphasis supplied.)

On August 15, 1995, Patrick resigned. According to Patrick, he resigned only from GKC, but remained a shareholder, officer and director of KYAMC. Kilburn, on the other hand, said that Patrick resigned from both GKC and KYAMC, and he reminded Patrick that, by resigning, he would be walking away from a significant amount of money in KYAMC.

In a letter dated August 16, 1995, Kilburn wrote Patrick that he was exercising his option to purchase Patrick's shares in KYAMC in accordance with the shareholder agreement. Kilburn then forwarded a check in the amount of $14,594.56 — the book value of the stock — which Patrick refused. Subsequently, KYAMC made distributions to its shareholders, but did not pay Patrick.

Patrick brought suit against Kilburn for converting his shares in KYAMC and against Kilburn, KYAMC, and the other officers for breaching their fiduciary duty.[3] At trial, Patrick and Kilburn disputed whether the shareholder agreement gave Kilburn the right to purchase Patrick's stock. Patrick argued that the agreement did not give Kilburn any such right because the stock purchase provision applied only to "employees" of KYAMC, and he was not an employee. The trial court agreed and directed a verdict against Kilburn on the conversion claim and awarded $108,396.25 in compensatory damages.

With regard to the remaining claims, the jury found that all defendants breached a fiduciary duty, but that Kilburn, alone, acted in bad faith. Although the jury awarded no compensatory damages on the breach of fiduciary duty claim, it ordered Kilburn to pay puni-

---

[2] The agreement provided that the purchase price of the stock would be book value, unless the majority shareholders agreed upon a different amount.

[3] Patrick also sought to inspect the corporate records of KYAMC.

tive damages and attorney fees to Patrick.

1. Kilburn asserts that the trial court erred in directing a verdict on conversion. We agree. A directed verdict is proper only where there is no conflict in the evidence on any material issue, and the evidence, with all reasonable deductions construed in favor of the non-movant, demands a particular verdict.[4] Here, the evidence did not demand a finding that Kilburn converted shares of stock owned by Patrick.

"[C]onversion involves an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights."[5] The very essence of conversion is that the act of dominion is wrongfully asserted.[6] Thus, if a party has a right to assert ownership, the act of dominion is not wrongful and does not constitute conversion. Accordingly, if the shareholder agreement gave Kilburn the right to purchase Patrick's shares at book value, then he could not have converted the stock.[7]

Under the express language of the shareholder agreement, Kilburn had the unilateral right to purchase Patrick's shares of stock if Patrick withdrew, resigned or was terminated "from his employment by the Corporation." The trial court found that the term "employment" was unambiguous because employment is commonly understood as a master-servant relationship. In directing a verdict against Kilburn, the trial court concluded that "there is simply no evidence from which a jury could determine that Mr. Patrick was an employee of [KYAMC]." We disagree.

Under Georgia law, the term "employment" is capable of a broader meaning than that given by the trial court. Significantly, according to the Georgia Business Corporation Code, an "[e]mployee includes an officer" of the corporation.[8] In the workers' compensation context, an employer-employee relationship may be inferred where one receives valuable services from another and retains the right to discharge the one performing the services.[9] Although payment of compensation is relevant to the issue of employment, it is not dispositive.[10]

The trial court erred in concluding that there was no evidence

---

[4] OCGA § 9-11-50 (a); *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189 (1) (416 SE2d 807) (1992).

[5] (Punctuation omitted.) *Paulsen Street Investors v. EBCO Gen. Agencies*, 237 Ga. App. 116, 121 (3) (514 SE2d 116) (1999).

[6] *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987).

[7] *Ogletree v. Brokers South*, 192 Ga. App. 53, 54 (1) (383 SE2d 900) (1989).

[8] OCGA § 14-2-140 (8).

[9] *Housing Auth., City of Cartersville v. Jackson*, 226 Ga. App. 182, 184 (2) (486 SE2d 54) (1997).

[10] *Empire Distrib. v. George L. Smith II Ga. World Congress &c.*, 235 Ga. App. 742, 744 (509 SE2d 650) (1998).

that Patrick was in the employment of KYAMC. Patrick was the vice president of KYAMC. As such, he acknowledged that he could be fired from the company. Although Patrick did not receive a salary for his work at KYAMC, he did perform services for the company. Patrick helped locate office space for KYAMC, participated in company meetings, and signed and processed checks for the company. At one point, he served as the comptroller of the company.[11] In a KYAMC business proposal, Patrick was listed as "key personnel." And, on direct examination, Patrick asserted that he was "integral in the success of [KYAMC]." Under these circumstances, there is at least some ambiguity as to whether Patrick was in the employ of KYAMC.

As there is an ambiguity, we turn to the rules of contract construction to determine whether the ambiguity may be resolved.[12] "If after applying the rules, the ambiguity still remains, then the trier of fact must resolve the ambiguity.[13]

Here, the rules of construction resolve the ambiguity. We note the rule that, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."[14] Thus, in interpreting the agreement, we must strive to give it a reasonable and effective meaning that does not render some sections meaningless.[15]

Under the express terms of the shareholder agreement, the only majority shareholders were Kilburn and Young, and the only minority shareholders were Patrick and Hutchenson. Using the traditional master-servant definition of employment, neither minority shareholder was an "employee" of the company. So this definition of the word "employment" renders the clause granting Kilburn the right to purchase the shares from a minority shareholder meaningless. On the other hand, both minority shareholders were officers of KYAMC. By using the definition of the term "employment" found in the corporate code, we give the contract a reasonable interpretation that upholds the contract in its entirety. The rules of construction require that we use the latter definition. Accordingly, the term "employment" is unambiguous, and Patrick was in the employment of KYAMC. Therefore, the trial court erred in directing a verdict against Kilburn on conversion.

2. Kilburn contends that the erroneous entry of the directed verdict was pivotal to the award of punitive damages and attorney fees.

---

[11] Burton subsequently took over this role.

[12] *Empire Distrib.*, supra.

[13] Id.

[14] OCGA § 13-2-2 (4).

[15] *Whitmire v. Colwell*, 159 Ga. App. 682, 683 (285 SE2d 28) (1981).

Thus, he argues that the reversal of the conversion claim mandates the reversal of the award of punitive damages and attorney fees. We agree. As the jury awarded no actual damages on the breach of fiduciary duty claim, the only damages awarded stemmed from the conversion claim. As we reversed the directed verdict on conversion, the award of punitive damages and attorney fees cannot stand.[16]

3. Kilburn contends that the trial court erred in admitting evidence of a similar act. Over objection, the trial court allowed Patrick to testify that Kilburn terminated another employee, Hutchenson, who was the other minority shareholder in KYAMC, and that Kilburn wrongfully purchased all of her stock. According to Kilburn, this testimony was prejudicial and should have been excluded. We disagree.

Although evidence of similar acts is generally inadmissible, such evidence may be admitted where "the nature of the action renders necessary or proper the investigation of . . . conduct."[17] With regard to allegations of bad faith, it is frequently difficult to establish the defendant's state of mind.[18] The defendant's state of mind may be illustrated by other acts of a similar nature that indicate a general practice or course of conduct or display intent, motive, knowledge, or bad faith.[19] Here, Patrick alleged that Kilburn acted in bad faith in breaching a fiduciary duty. Accordingly, Kilburn's treatment of the only other minority shareholder arguably demonstrated a course of conduct. Under these circumstances, we cannot say that the trial court abused its discretion in admitting the evidence.[20]

4. In view of our holding in Division 1, we need not address Kilburn's remaining enumeration of error.

*Judgment reversed. McMurray, P. J., and Andrews, P. J., concur.*

DECIDED NOVEMBER 9, 1999 —
RECONSIDERATION DENIED DECEMBER 2, 1999 — 

*Womble, Carlyle, Sandridge & Rice, Everett W. Gee III*, for appellant.

---

[16] See *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 270 (2) (416 SE2d 274) (1992) (" '[p]unitive damages may not be recovered where there is no entitlement to compensatory damages' "); *Instrument Repair Svc. v. Gunby*, 238 Ga. App. 138, 141 (4) (518 SE2d 161) (1999) ("[t]he absence of liability for compensatory damages precludes an award of OCGA § 13-6-11 attorney fees or other expenses of litigation").

[17] (Punctuation omitted.) *Layfield v. Southeastern Constr. Coordinators*, 229 Ga. App. 71, 72 (2) (492 SE2d 921) (1997).

[18] Id.

[19] Id.

[20] See *Kent v. Brown*, 238 Ga. App. 607, 615 (5) (518 SE2d 737) (1999).

*Meadows, Ichter & Trigg, Cary Ichter, Steven M. Kushner, Michael J. Bowers*, for appellee.