A02A0184, A02A0185. KILBURN v. YOUNG; and vice versa.
(569 SE2d 879)

PHIPPS, Judge.

Robert Young sued his former business partner, Galen Kilburn, Jr., alleging that Kilburn had breached fiduciary duties, acted in bad faith, been stubbornly litigious, and caused him unnecessary trouble and expense. Young sought compensatory and punitive damages, litigation expenses, and attorney fees. At trial, Kilburn moved for a directed verdict on all claims. The trial court granted the motion as to Young's claim for punitive damages.[1] The jury returned a verdict in Young's favor on the remaining claims.

In Case No. A02A0184, Kilburn appeals the judgment entered upon the jury's verdict, challenging evidentiary rulings, the trial court's refusal to give an instruction to the jury, and its refusal to grant his motion for a directed verdict in its entirety. In Case No. A02A0185, Young challenges the directed verdict against his claim for punitive damages. We have consolidated their appeals in this opinion, affirming Case No. A02A0184 and reversing Case No. A02A0185.

In January 1991, Kilburn and Young formed Kilburn-Young Asset Management Corporation (KYAMC), a Subchapter S corpora-

[1] The trial court also directed a verdict for Kilburn as to one of Young's counts alleging breach of fiduciary duties. That ruling is not relevant to this appeal.

tion, to contract with the then existing Resolution Trust Corporation (RTC) to manage and dispose of real estate assets. Kilburn's shareholder interest was over 50 percent, and Young was a minority shareholder. As the majority shareholder, Kilburn had authority to change the board of directors, which could make personnel decisions. Kilburn loaned the company start-up capital, but was not involved in its day-to-day activities. Young was an officer and salaried employee of KYAMC.

During a start-up period of approximately six months, Kilburn permitted KYAMC to occupy, at no charge, office space at Atlanta's Galleria that was leased to Galen Kilburn & Company, a separate real estate development and commercial leasing company that he owned. In March 1991, Kilburn extended the lease on the Galleria space for five years in a deal which included one year's free rent for Galen Kilburn & Company.

In June 1991, KYAMC secured a three-year contract with the RTC, and the amount outstanding on Kilburn's loan was paid by October. With a newly hired staff, KYAMC needed a larger office space. At Young's request, Kilburn found a new office suite, and KYAMC moved into it in December 1991. Kilburn also relocated Galen Kilburn & Company to a different, but adjoining, suite so that he could "keep an eye on his investment" at KYAMC. Unable to sublet the Galleria space, Kilburn charged KYAMC approximately 75 percent of the shortfall. Kilburn testified that when he mentioned this payment arrangement to Young "somewhat later," Young agreed to it. Young, on the other hand, claimed that he complained about the charge, but Kilburn ended the conversation with, "Well, that's just the way it's going to be."

In August 1992, Kilburn and Young formed Connecticut Properties, Inc. (CPI), with Kilburn as the majority shareholder, to invest in a real estate opportunity in Connecticut. CPI assigned that opportunity to Groton Acquisition Limited Partnership (GALP), of which CPI was the general partner and Kilburn, Young, and another investor were the limited partners. Because of financial problems and legal disputes, KYAMC and CPI loaned money to GALP. When KYAMC, CPI, Kilburn, and Young later received settlement proceeds from litigation, Kilburn and Young exchanged proposals for allocating the proceeds. Ultimately, Kilburn calculated an amount that Young would receive, stating to him, "[T]his is final. No further negotiation." Although Young cashed the check disbursed to him, he testified that he did not accept the amount as full settlement. He believed he was entitled to more, claiming that Kilburn's allocation had not taken into account loans made to GALP by KYAMC and CPI. But he did not want to risk being fired and believed that further complaining would be futile.

Indeed, Kilburn testified that "[Young] wasn't really entitled to any claim whatsoever." He stated that Young had asked to be relieved of the matter and that he had taken control and settled the matter. He asserted that "it was up to [him]" as the majority shareholder to decide the allocation, that in an "s corporation," "all the expenses and all the income and everything flows right to the person," and that the allocation was fair.

In June 1995, KYAMC's contract, which had been extended by one year, expired. After KYAMC completed its final obligations to the RTC, it received its final payment.

In March 1997, Kilburn filed a lawsuit, styled *KYAMC v. Young*, apparently alleging that Young had breached fiduciary duties as an officer. That case was dismissed (hereinafter "Dismissed Action") because Kilburn, although he was the majority shareholder, had no authority to bring such an action in the name of the corporation. Young incurred expenses in accomplishing the dismissal. Kilburn later filed a shareholder derivative suit on behalf of KYAMC against Young (hereinafter "Derivative Action"), raising essentially the same claims as those asserted in the Dismissed Action.[2]

Young testified that he was "outraged" that Kilburn had sued him in the Dismissed Action. By that time, KYAMC had "essentially closed," and he no longer felt threatened by Kilburn. He then filed the instant action against Kilburn, alleging that Kilburn, as KYAMC's majority shareholder, had breached fiduciary duties he owed to him, as a minority shareholder, by, among other things: (1) requiring KYAMC to pay certain of Galen Kilburn & Company's expenses, including an amount due on the lease on the Galleria space; (2) misallocating proceeds from the CPI settlement; and (3) filing the Dismissed Action without having any authority to do so.

### Case No. A02A0184

As an initial matter, we note that Kilburn's brief fails to comply with this court's rules. Claims of error are argued collectively, and arguments are intermingled.[3] "Our requirements as to the form of appellate briefs were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court; a party will not be

---

[2] The trial court dismissed the Derivative Action for Kilburn's failure to make KYAMC a party, but this court reversed on the basis that Kilburn should have been permitted to add KYAMC as an indispensable party. See further *Kilburn v. Young*, 244 Ga. App. 743 (536 SE2d 769) (2000).

[3] See Court of Appeals Rule 27 (c) (1).

granted relief should we err in deciphering a brief which fails to adhere to the required form."[4]

1. Kilburn challenges the trial court's rulings on the parties' motions in limine regarding the admission of evidence of the Dismissed Action and the Derivative Action. "The admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion."[5]

(a) Kilburn sought to exclude evidence of the Dismissed Action. But the trial court admitted it because Kilburn's filing of the Dismissed Action served as one of the factual bases for Young's claim that Kilburn had breached fiduciary duties. The trial court did not abuse its discretion.

(b) Young initially moved to consolidate the instant action with the Derivative Action for trial. Kilburn objected, asserting that doing so would confuse the jury. The trial court did not consolidate the cases.

Young then sought to exclude evidence of the Derivative Action. At a pretrial hearing, Kilburn's attorney urged, "If [Young is] allowed to put on the evidence relating to [the Dismissed Action], we need to put on evidence of Mr. Young's breaches of fiduciary duties and taking moneys from [KYAMC] because the jury needs to be apprised of Mr. Young's breaches of fiduciary duties in his efforts to recover from Galen Kilburn." On appeal, Kilburn complains that while Young was permitted to present evidence that he had filed the Dismissed Action, he was prevented from explaining *why* he was suing Young.

The trial court prohibited evidence of the Derivative Action, determining that the issue of the Derivative Action — whether Young breached any fiduciary duties — was not at issue in Young's suit against Kilburn. We find no abuse of discretion in excluding the evidence.

2. Kilburn contends that the trial court erred in its rulings concerning a suit filed against him by another minority shareholder, Steven Patrick. Patrick alleged that Kilburn had breached fiduciary duties in his purchase of Patrick's KYAMC shares of stock.[6]

(a) The trial court did not abuse its discretion in denying Kilburn's motion in limine to exclude evidence of that lawsuit.

> Although evidence of similar acts is generally inadmissible, such evidence may be admitted where the nature of the

---

[4] (Punctuation and footnote omitted.) *Campbell v. Breedlove*, 244 Ga. App. 819, 821 (535 SE2d 308) (2000).

[5] (Punctuation and footnote omitted.) *Kroger Co. v. Strickland*, 248 Ga. App. 613, 616 (2) (548 SE2d 375) (2001).

[6] See further *Kilburn v. Patrick*, 241 Ga. App. 214 (525 SE2d 108) (1999).

action renders necessary or proper the investigation of conduct. With regard to allegations of bad faith, it is frequently difficult to establish the defendant's state of mind. The defendant's state of mind may be illustrated by other acts of a similar nature that indicate a general practice or course of conduct or display intent, motive, knowledge, or bad faith. Here, [Young] alleged that Kilburn acted in bad faith in breaching a fiduciary duty. Accordingly, Kilburn's treatment of [another] minority shareholder arguably demonstrated a course of conduct. Under these circumstances, we cannot say that the trial court abused its discretion in admitting the evidence.[7]

(b) It follows that the trial court did not err in denying Kilburn's request to instruct the jury to disregard Patrick's testimony concerning the lawsuit.

(c) The trial court did not abuse its discretion in granting Young's motion to prohibit Kilburn's attorney from eliciting testimony that Patrick's complaint named as defendants not only Kilburn, but also Young, KYAMC, and KYAMC's controller. Kilburn's attorney argued that the jury "need[ed] to understand it was not just Mr. Kilburn who was charged with breaching fiduciary duty, Mr. Young was also charged with that."

Kilburn has not shown how the jury's lack of this information harmed him. Furthermore, Young proffered evidence that Kilburn had denied Patrick access to corporate records and that to obtain the documents that he needed, Patrick added as defendants the corporate entity, Young, its then officer, and the controller.

3. Kilburn contends that the trial court erred in refusing to grant in its entirety his motion for directed verdict. "A directed verdict is authorized when there is no conflict in the evidence as to any material issue and the evidence and all reasonable deductions therefrom demand a particular verdict."[8]

(a) Kilburn asserts that Young acquiesced in the decisions regarding the Galleria rental payments and the CPI settlement allocation. Young, however, testified that he objected to both decisions. Thus, a directed verdict was not authorized on this ground as to Young's claims that were submitted to the jury.

(b) Kilburn argues that Young's cashing the settlement check amounted to an accord and satisfaction. But because he failed to

---

[7] (Punctuation and footnotes omitted.) *Kilburn*, supra, 241 Ga. App. at 218.

[8] (Footnote omitted.) *Williamson v. Yang*, 250 Ga. App. 228, 234 (4) (550 SE2d 456) (2001).

raise this ground below in his motion for directed verdict, no question is presented for decision on appeal.[9]

## Case No. A02A0185

4. Young cross-appeals the trial court's directed verdict against his claim for punitive damages. "A breach of fiduciary duties is sufficient to support an award of punitive damages. Whether punitive damages should be awarded for a breach of fiduciary duties is ordinarily a question for the jury."[10] Because there was some evidence that Kilburn breached fiduciary duties, the trial court erred in failing to submit Young's claim for punitive damages to the jury.[11] Accordingly, we reverse the trial court's directed verdict on that issue.

*Judgment affirmed in Case No. A02A0184. Judgment reversed in Case No. A02A0185. Andrews, P. J., and Mikell, J., concur.*

DECIDED JULY 11, 2002 —
RECONSIDERATIONS DENIED JULY 30, 2002 ▮▮▮▮▮▮▮

*Fellows, Johnson & La Briola, Henry D. Fellows, Jr., Eric A. Kane, Kevin P. Weimer,* for appellant.
*Long, Aldridge & Norman, Deborah Ebel, David N. Stern,* for appellee.

---

[9] See *Magnus Homes, LLC v. DeRosa,* 248 Ga. App. 31, 32-33 (2) (545 SE2d 166) (2001).
[10] (Citation and punctuation omitted.) *Home Ins. Co. v. Wynn,* 229 Ga. App. 220, 223 (2) (493 SE2d 622) (1997); see also *Marshall v. W. E. Marshall Co.,* 189 Ga. App. 510, 512 (2) (376 SE2d 393) (1988); *Pelletier v. Schultz,* 157 Ga. App. 64, 66 (3) (b) (276 SE2d 118) (1981).
[11] See *Home Ins. Co.,* supra.