## A11A0579, A11A0778. ANDREWS v. FORD MOTOR COMPANY et al.; and vice versa.

(713 SE2d 474)

ELLINGTON, Chief Judge.

In this products liability action, Shirley Andrews sued Ford Motor Company and Langdale Ford Company ("the Ford companies") in the Superior Court of Lowndes County for property damages she sustained when her 2002 Ford Expedition caught fire in her garage and for punitive damages. After a hearing on the Ford companies' motion for summary judgment, the trial court determined that Andrews is not entitled to recover from the Ford companies for damages to her car, her home, and her home's contents to the extent that she previously received compensation for those damages from her insurers, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm"). Based on this determination, the trial court granted summary judgment in part to the Ford companies and noted that, "in the event the jury returns a verdict in favor of [Andrews that exceeds the amount she previously received from State Farm], the court[,] in preparing the judgment, will reduce the jury's verdict by the amount of compensation for items previously paid by [State Farm]." The trial court effectively denied the Ford companies' motion for summary judgment as to Andrews' claim for punitive damages, noting "nothing contained in this order shall prohibit [Andrews] from asserting a punitive damages claim against both [of the Ford companies]." In addition, the trial court ruled that Andrews is entitled to present evidence at trial as to the property damage she sustained and that the Ford companies are not entitled to present evidence as to any compensation paid by State Farm (or any other collateral sources).

In Case No. A11A0579, Andrews appeals, arguing that the trial court erred in granting partial summary judgment to the Ford companies because the trial court should have applied the collateral source rule to prevent the introduction of any evidence of insurance payments she received from State Farm. She also contends the trial court erred in granting the insurers' motion to intervene.[1]

In Case No. A11A0778, the Ford companies, as cross-appellants, contend the trial court erred in ruling that, despite its partial grant of summary judgment denying Andrews the right to recover from the Ford companies those property damage amounts paid to her by State

---

[1] In a prior order, the trial court addressed State Farm's motion to intervene in this action, allowing the insurers very limited participation. Andrews also challenges this ruling. For the reasons discussed in Division 3, infra, we vacate that ruling and remand for clarification.

Farm, Andrews could still introduce at trial evidence related to the damage to her car and home and could still seek punitive damages. The Ford companies argue that implicit in the trial court's ruling is a finding that, by accepting State Farm's payments for the damages sustained, Andrews' right to sue passed to State Farm by assignment and subrogation and that Andrews no longer had standing to sue for those losses.

For the reasons explained below, we affirm the trial court's partial grant of summary judgment in Case Nos. A11A0579 and A11A0778; and we vacate the trial court's order granting State Farm's motion to intervene in Case No. A11A0579 and remand the matter to the trial court for clarification.

The relevant facts are undisputed. On October 6, 2005, Andrews' 2002 Ford Expedition, which was parked in her garage, spontaneously caught fire during the night as the result of an allegedly defective, factory-installed cruise control switch. The fire destroyed the Expedition and damaged Andrews' home and its contents, including her husband's 2004 Ford Explorer that had been parked beside the Expedition.

Shortly after being notified of the fire, State Farm began issuing checks to Andrews or her contractors for work done to clean or to repair the premises, compensating her insured losses. State Farm, pursuant to the homeowners policy, paid approximately $50,000 for damages to Andrews' home and its contents. State Farm also made a payment pursuant to the automobile policy's comprehensive coverage provision to the lienholder of Andrews' Ford Expedition, paying $21,109, which represented the car's actual cash value, taxes, and license and title fees, and which extinguished Andrews' debt but left no net amount payable to her, other than her refunded deductible. It appears that Andrews was completely compensated for her insured losses under the terms of the policies.

Andrews brought this action against Ford Motor Company, under theories of negligence, product liability, and failure to warn, and against Langdale Ford Company, the licensed dealer from whom she had purchased the Expedition new, under theories of breach of warranty and failure to warn. Andrews seeks compensatory damages of approximately $20,000 for the loss of her car, compensatory damages of approximately $100,000 for damage to her home and its contents and for "additional living expenses," and she also seeks punitive damages.

1. In Case No. A11A0579, Andrews contends the trial court erred in granting partial summary judgment to the Ford companies, arguing that the application of the collateral source rule bars the Ford companies from presenting any evidence as to insurance payments made by State Farm.

We agree that the collateral source rule bars the Ford companies from presenting evidence at trial that Andrews received compensation from her insurers. Indeed, the trial court correctly ruled as such. Andrews' reliance on the collateral source rule as a basis for reversing the trial court's summary judgment ruling, however, is misplaced.

Generally, the collateral source rule prevents a defendant tortfeasor from presenting evidence to the jury that the plaintiff previously received compensatory payments from another source, such as the plaintiff's own insurer. *Hoeflick v. Bradley*, 282 Ga. App. 123, 124 (1) (637 SE2d 832) (2006). Underlying this rule is the premise that "[a] tortfeasor cannot diminish the amount of [its] liability by pleading payments made to the plaintiff under the terms of a contract between the plaintiff and a third party who was not a joint tortfeasor." (Citation and punctuation omitted.) *Adkins v. Knight*, 256 Ga. App. 394, 396 (568 SE2d 517) (2002).[2] The trial court's ruling in this case, which provides that the Ford companies may not present evidence of State Farm's payments to Andrews, already provides her with the protections afforded by the collateral source rule.

Nevertheless, even when the collateral source rule applies and the court excludes from the trial evidence that the plaintiff received compensation from someone other than the tortfeasor, the rule does *not* provide that a plaintiff is entitled to *collect* from both his or her insurer and from the defendant tortfeasor for the same item of damages. Such a double recovery is prohibited under fundamental equitable principles. *Carter v. Banks*, 254 Ga. 550, 552 (1) (330 SE2d 866) (1985) ("[A]n insured ought not to collect damages for his [or her] loss from both his [or her] insurer and the tortfeasor, [because that would result in] a double recovery.") (citation omitted). See also *Overstreet v. Ga. Farm &c. Ins. Co.*, 182 Ga. App. 415, 417 (1) (355 SE2d 744) (1987) ("[A] plaintiff may not recover twice for the same loss."). Andrews has not demonstrated any error in the trial court's ruling that, in the event of a favorable verdict, she will not be allowed to collect from the Ford companies for her property damages to the extent she has received compensation for those damages from State Farm.

2. In Case No. A11A0778, the Ford companies contend that, as a result of the trial court's partial grant of summary judgment, Andrews' claims for property damage were completely extinguished.

---

[2] See also Paul S. Milich, Georgia Rules of Evidence, § 9:3 (2d ed., 2010-2011) (The collateral source rule reflects the fact that "our tort system is primarily concerned with allocating fault, not apportioning losses according to the parties' ability to pay.") (footnote omitted).

The Ford companies contend that, by virtue of Andrews accepting State Farm's payments for her property damages, her right to sue passed to State Farm by assignment and subrogation such that Andrews has no standing to sue the Ford companies and should not be allowed to proceed to trial and present evidence on those claims. Moreover, because Andrews does not have any claims for compensatory damages apart from her claims for property damage, and because, without a valid claim for compensatory damages, a plaintiff cannot pursue a claim for punitive damages,[3] the Ford companies contend the trial court erred in denying their motion for summary judgment on Andrews' claim for punitive damages.

These arguments lack merit, however, as the Ford companies have misconstrued the trial court's order. As explained in Division 1, supra, the trial court ruled that, because Andrews may not secure a double recovery, the amount of any verdict in her favor and against the Ford companies on her claims for property damage (if the award exceeds the amount she previously received from State Farm) will be reduced by the amount of compensation for those same items of damages that she previously received from State Farm. The trial court did *not* rule, on the other hand, that, as a matter of law, the Ford companies did not breach a duty owed to Andrews or otherwise rule that they cannot be held liable in tort for her damages under the theories of recovery alleged.[4] Because the trial court's judgment does not constitute a determination as a matter of law that the Ford companies are not liable on Andrews' claims for compensatory damages, they failed to show that the trial court erred in denying their motion for summary judgment on Andrews' claims for punitive damages.

Moreover, the fact that State Farm acquired by subrogation the right to sue Ford Motor Company to recover the payments it made to its insured for covered losses[5] did not result in an assignment which

---

[3] See, e.g., *Southern Gen. Ins. v. Holt*, 262 Ga. 267, 270 (2) (416 SE2d 274) (1992) ("A claim for punitive damages has efficacy only if there is a valid claim for actual damages to which it could attach. Punitive damages may not be recovered where there is no entitlement to compensatory damages.") (citations and punctuation omitted).

[4] Andrews contends that some of her property damages were not covered by insurance. Although it is undisputed that State Farm paid Andrews approximately $50,000 for her *insured* property damage to her home and its contents, her complaint alleges that she sustained damages of approximately $100,000 in damage to her home and its contents and in additional living expenses. The trial court expressly denied the Ford companies' motion for summary judgment as to Andrews' claim for items of property damage to her home to the extent she has not received compensation from State Farm. Accordingly, the Ford companies' argument that the trial court's order resolved all of Andrews' claims for compensatory damages fails for this reason as well.

[5] Generally, the insurer, or subrogee, is limited to indemnification and "the subrogee is to be reimbursed only to the extent of the amounts paid in discharge of the obligation assumed

divested Andrews of her cause of action and, therefore, which prevented her from presenting evidence of her losses at trial. State Farm did not obtain an assignment from Andrews[6] nor did her policies of insurance create such an assignment.[7] Because Andrews' claims remain viable, none of the arguments posed by the Ford companies based upon theories of assignment and subrogation have merit.

3. In Case No. A11A0579, Andrews contends the trial court erred in granting State Farm's motion to intervene in the trial of the case on the basis that State Farm is a stranger to the lawsuit and has no interest to protect. Andrews contends that allowing State Farm to intervene would permit it to "join forces with [the Ford companies] to be adversaries to their own insured." For the reasons that follow, we vacate the court's order granting State Farm's motion to intervene.

> We have defined intervention as the procedure by which a third person, not originally a party to a suit, but claiming an interest in the subject matter, comes into the case, in order to protect his right or interpose his claim. A true intervenor takes the case as he finds it and cannot expand the litigation; he or she merely stakes a claim to a share in the result of the pending litigation.

(Citations and punctuation omitted.) *AC Corp. v. Myree*, 221 Ga. App. 513, 515 (1) (471 SE2d 922) (1996). State Farm moved to intervene as a matter of right pursuant to OCGA § 9-11-24 (a) (2), which provides that, upon timely application, anyone shall be permitted to

---

by the subrogee." (Citations and punctuation omitted.) *Southern R. Co. v. Malone Freight Lines*, 174 Ga. App. 405, 408 (1) (330 SE2d 371) (1985).

[6] The record reveals that Andrews did not execute any document that could be construed as a loan receipt or an assignment of her chose in action.

[7] State Farm's auto policy contains the following subrogation provision regarding payments made under its comprehensive coverage: "[T]he right of recovery of any party we pay passes to us. Such party shall: (1) not hurt our rights to recover; and (2) help us get our money back." Andrews' homeowners policy contains a subrogation clause which provides:

> 8. Subrogation. An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.
> If an assignment is sought, an insured shall:
> a. sign and deliver all related papers;
> b. cooperate with us in a reasonable manner; and
> c. do nothing after a loss to prejudice such rights.

These policy provisions do not evidence an intent to assign Andrews' cause of action, but create in the insurer a right to recover from the tortfeasor those covered damages that it paid to its insured. See *Allstate Ins. Co. v. Welch*, 259 Ga. App. 71, 72 (1) (576 SE2d 57) (2003) (the subrogation "rights of recovery" language in the policy did not entitle the insurer to succeed to the insured's right of action).

intervene in an action

> [w]hen the applicant claims an interest relating to the property or transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Intervention does not occur until the court enters an order permitting it. See *Thomas v. Jackson*, 238 Ga. 90, 94 (3) (231 SE2d 50) (1976). One who is allowed by a court order to intervene acquires the status of a party and may file any pleading in the case that the original parties could have filed. See *Woodward v. Lawson*, 225 Ga. 261, 262 (167 SE2d 660) (1969); see also *Intl. Maintenance Corp. v. Inland Paper &c.*, 256 Ga. App. 752, 754 (1) (569 SE2d 865) (2002) ("'an intervenor [may] file whatever briefs, evidence, or other papers it chooses," and also "may choose discovery tactics different from those of a plaintiff").

In the instant case, the trial court's order "granted" State Farm's motion to intervene "upon the following conditions": State Farm would not be allowed to participate as a party during the main action between Andrews and the Ford companies, it would not be allowed to have its name added to the caption of the case, and none of its claims would be addressed by the court until after the court had resolved the claims presented in the main action. Although the court's order purports to grant State Farm the right to intervene, it denies State Farm the status necessary to protect any interest it may have — that of a party — and the litigation tools necessary to participate in the case as an intervenor so that it may carry out the purpose of intervention, that is, to protect whatever rights it may have or whatever claims it may seek to interpose *during* the pending litigation.

Given that the court's order is the functional equivalent of denying State Farm's motion to intervene, Andrews has not shown that she was harmed by it. Clearly, State Farm has not been allowed to participate in the trial as a party defendant so as to "join forces" against Andrews. "On appeal, a party must show harm as well as error. Because [Andrews has] not shown harm as a result of this alleged error, [her] argument is without merit." (Citation and punctuation omitted.) *Morton v. Horace Mann Ins. Co.*, 282 Ga. App. 734, 740 (5) (639 SE2d 352) (2006).

Nevertheless, because the court's order appears to be contradictory, we vacate the order and remand it to the trial court to clarify whether it intended to afford State Farm the status of an intervenor,

and, if it so intended, whether it had determined that the require-
ments of OCGA § 9-11-24 (a) (2) had been satisfied. See *Brown v.
Truluck*, 239 Ga. 105-106 (236 SE2d 60) (1977) (upon timely
application, one shall be permitted to intervene if he establishes an
interest relating to the property or transaction that is the subject
matter of the action; an impairment or impediment of his interest
that may result from an unfavorable disposition of the action; and
inadequate representation of this interest by the parties already
involved).

*Judgment affirmed in part and vacated in part and case
remanded. Miller, P. J., concurs. Doyle, J., concurs and concurs in
judgment only as to Division 3.*

DECIDED JULY 1, 2011.

*O. Wayne Ellerbee*, for appellant.
*Young, Thagard, Hoffman, Smith & Lawrence, John H. Smith,
Jr., Huff, Powell & Bailey, Michael R. Boorman, David A. Terry*, for
appellees.