**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 28, 2016**

# In the Court of Appeals of Georgia

A16A1003.  ENDSLEY  v.  GEOTECHNICAL  &  ENVIRONMENTAL CONSULTANTS, INC. et al.

DILLARD, Judge.

Mildred Endsley appeals from the trial court's denial of her motion for new trial following its entry of judgment on a jury's verdict in favor of Geotechnical & Environmental Consultants, Inc. ("GEC") and Patricia Mason (collectively, "appellees") in Endsley's personal-injury suit, in which United Health Group ("UHG") intervened to seek reimbursement for workers' compensation benefits that UHG paid to Endsley. On appeal, Endsley contends that the trial court erred in (1) denying her request to bifurcate the trial; and (2) after a stipulation was reached between Endsley and UHG as to a monetary amount, instructing the jury that UHG had paid benefits to Endsley and had done so as a result of a wreck, as well as

instructing the jury that UHG's workers' compensation lien was "evidence about the presence or absence of insurance or benefits." Endsley contends that, because of the foregoing errors, the trial court should not have entered judgment on the jury's verdict or should have granted her motion for new trial. For the reasons set forth *infra*, we affirm.

The undisputed underlying facts show that in 2008, Endsley was involved in a motor-vehicle accident with Mason while both were acting within the scope of their respective jobs. Mason collided with the rear of Endsley's vehicle, and both Mason and her employer, Geotechnical & Environmental Consultants, Inc., admitted to their negligence and/or vicarious liability. However, what *was* disputed at trial was the proximate cause of Endsley's alleged injuries, which Mason and GEC argued were the result of a pre-existing condition at the time of the collision.

Following the accident, Endsley received workers' compensation benefits through UHG. Then, after Endsley filed suit against Mason and GEC in 2010, UHG filed a motion in 2014 to intervene in the action under OCGA § 34-9-11.1. And noting that there was "no objection by any of the parties," the trial court granted UHG's motion.

2

Prior to trial in 2015, all three parties engaged in an exchange of emails with the trial court, and those communications were later made part of the record on motion by Endsley. These emails reflect that UHG wished to participate in the trial and that, upon learning this, counsel for Endsley contacted all parties and the court to express disagreement with the suggestion that UHG should be permitted to participate in the trial, which would inject knowledge of the workers' compensation lien into the main proceedings. Instead, suggested Endsley, the court should wait until after the main trial to decide what to do with UHG's lien. However, in an emailed response to all parties, the trial court concluded that UHG would be allowed to participate at trial because, in its view, this was the "proper role for an intervenor at trial." Endsley's counsel again expressed his disagreement with this decision in an email sent to all parties and the trial court. But thereafter, the trial court issued an order as to the role of UHG as an intervenor, concluding that UHG would "participate during the jury trial as a party" and be permitted to "make an opening statement, examine witnesses, offer evidence, and make closing arguments related to its interest of protecting and enforcing its subrogation lien."

Prior to beginning jury selection, the trial court told the venire that UHG would be participating as an intervenor and had paid workers' compensation benefits to

3

Endsley. Thus, the trial court explained, UHG had a lien against any recovery and could present evidence to protect and enforce its lien. The court further instructed, however, that the jury's focus would not be on UHG's claim and that it would not be concerned with making a decision as to the lien.

Following these comments by the trial court, Endsley objected to UHG's participation on the record, arguing that the jury should not have been informed of UHG's payment of benefits and that the court should decide the issue of the lien after the jury's return of a verdict. But the trial court again ruled that, as an intervenor, UHG had the right to "participate and influence" the jury to protect and enforce its lien, but that the jury would consider the evidence only to determine liability and the amount of damages.

Thereafter, Endsley further objected to any reference as to the amount of workers' compensation payments received or the amount of the claimed lien because any such reference at trial would "further inject" knowledge of a collateral source. But Endsley then indicated to the court that she did not contest the amount of the lien and was willing to stipulate to same. And during a break that ensued in the proceedings, UHG and Endsley reached an agreement that they would stipulate to the amount of the lien. When the proceedings resumed, Endsley acknowledged that she

4

and UHG had "agreed that it's stipulated and there's no reason to present any of that to the jury."

The stipulation having been accepted, the trial court inquired, "[w]ith that stipulation, I don't think there's any need for [UHG] to present anything to the jury; is there?" UHG's counsel responded that she was "just going to explain why I was here, and not any amounts, and ask that [the jury] fully compensate Ms. Endsley's injuries." Endsley offered that UHG "certainly has a right to say that." Counsel for Mason and GEC then asked what he would have a right to say to the jury and asked if he could "explain to the jury what's going on or not?" The following colloquy then took place between the trial court and counsel for the parties:

> THE COURT: I mean, where I am in my thought process is, I don't know that there is any need for the Intervenor to do anything at trial if there is a stipulation that's been made between the Intervenor and the Plaintiff.

> [UHG]: Your Honor, my thoughts were that the jury should know that someone has asserted a lien on her — on the damages that she may be entitled to.

> THE COURT: I can tell [the jury] that, you know, the Defendant — a stipulation has been made that's going to take care of that aspect of the case, so you're not going to hear from the Intervenor. And it's

5

consistent with what I've already told them, which is their focus is to be on the Plaintiff – between the Plaintiff and the Defendant.

[ENDSLEY]: That, I think, is correct, Your Honor.

[UHG]: I would like for the jury to know that Ms. Endsley should be fully compensated for her damages and that any damages they award should fully compensate her.

But counsel for Mason/GEC still wanted to know exactly what the defendants could argue at trial about the intervention. The trial court explained that it was "having pause about any kind of statement made from the Intervenor . . . ." Endsley's counsel then explained that he thought "we are right where we would have been if [UHG] had not intervened at all. We try this case on the issues. Was this woman hurt? Was it the Defendant's fault? What are the damages?" Nevertheless, Mason/GEC's counsel persisted in asking the trial court whether the jury was entitled to know that Endsley "brought a workers' compensation claim seeking medical expenses and lost wages and that they reached a settlement with [UHG], and that now they have reached an agreement between themselves and [UHG] as to the enforceability of that lien." In response, the trial court concluded that,

6

[i]f we're at the position that the Intervenor is not going to introduce any evidence, then I'm not going to allow the Intervenor to argue the case, because I do think the issue that is out there, that it has been resolved as far as what the jury needs to know about it.

And that's what I'm going to do, is tell them that that's been resolved and it will be dealt with separately and that their issue is to decide between the Plaintiff and the Defendant whether there is liability and how much it is.

And so they will not — I'm not going to tell them how much the lien is.

Still unclear as to how the case would proceed, Mason/GEC's counsel asked the trial court if the jury would be told that "there was a settlement, there was a worker's comp[ensation] claim" because the jury "implicitly know[s] that . . . ." In response, the court further explained that it would instruct the jury

that the issue that existed between — with the Intervenor has been resolved separately from what they're doing, and so what they're going to be focused on is the claim that exists between the Plaintiff and the Defendant, which actually I've already told them once that. And I was going to tell them that in the charge, too, is that that's what they're to be focused on.

And when counsel for Mason/GEC asked the trial court what he would be allowed to say in his opening statement as to UHG's role, the court responded that Mason/GEC should "view it as though the Intervenor didn't intervene" and that they were "back to a case that's between the Plaintiff and the Defendant."

Thereafter, during preliminary instructions, the trial court charged the jury as follows:

> As you know from my earlier comments, the case that we're dealing with today is a motor vehicle collision case. And Ms. Endsley is contending that she was injured in this motor vehicle collision. The Defendants, Geotechnical and Environmental Consultants, Incorporated, and Ms. Mason, admit that Ms. Mason was at fault in causing the impact, and they admit that Ms. Mason was working in the scope of her employment at the time of this collision, but they deny there were injuries resulting from the collision.
>
> Earlier you heard me talk a little bit about United Health Group as an Intervenor in the case. I want to tell you that the issues relating to the Intervenor have been stipulated to between the Plaintiff and the Defendant at this point, and so you're not going to hear from the Intervenor. Your focus in this case is just going to be between the Plaintiff and the Defendant making the decision as to whether there is liability and whether there is causation in the case for injuries that are alleged and, if so, then what damages should be awarded.

8

Opening statements followed, in which counsel for Mason and GEC told the jury that

Endsley

> was on the job at the time, going to a job. And Patty Mason was on the job at the time, which is why Geotechnical is here as a defendant as well, because you're responsible for your employees while they're on the job for you. And that's why the workers' compensation carrier is involved in this case, because [Endsley] was on the job at the time and had a workers' comp claim from it.

Endsley did not object.

Thereafter, the parties presented their respective evidence and testimony and, at the conclusion of the trial, the trial court again instructed the jury as follows:

> Under Georgia's workers' compensation laws, United Health Group paid disability benefits and medical expenses as a result of the November 10th, 2008[ ] collision. The workers' compensation laws give United Health Group a subrogation lien against the Plaintiff's recovery in this case and a right to intervene and to protect and enforce such lien.

> As an Intervenor, United Health Group is a party to this case. As to the Intervenor, your task however is simply to render a verdict as to the Plaintiff's claims against the Defendants in accordance with these instructions.

Your verdict will include an itemization of damages that you award, based on your determination of the facts and your application of the law to those facts. Beyond your determination of the damages awarded, if any, to the Plaintiff, you do not need to address the Intervenor's claims.

And a short while later, the trial court further instructed as follows:

Other than notice of the workers' compensation lien, you have received no evidence about the presence or absence of insurance or benefits of any type, whether liability, health insurance, government benefits, or other employment-related benefits, for either the Plaintiff or the Defendants. You should not speculate as to whether the Plaintiff will or will not have to reimburse anyone else from her recovery, or whether any damages awarded against Defendant will be paid from any independent source.

If any adjustments are necessary, due to the existence of other resources relating to any party, those adjustments will be made after you return a verdict. It is your responsibility to return a verdict based on the evidence produced to you and the law given to you in this charge, to the best of your skill and knowledge. You are only responsible that your verdict speak the truth of the case itself.

The trial court then noted that it would pause its instructions in order to allow the parties to make closing arguments.[1]

During closing arguments, counsel for Mason and GEC commented that

we're not allowed to tell you much at all about this worker's [sic] compensation claim but what the judge has told you. And that's why [UHG's counsel] is sitting her[e] . . . today, is she represents . . . the workers' compensation carrier.

And all you know and are allowed to know is that under Georgia's workers' compensation laws[,] United Health Group has paid disability benefits and medical expenses as a result of the November 10th, 2008[ ] collision.

Beyond your determination of damages, you do not need to address the Intervenor's claims. We are not free to discuss what they paid or not.

But if they paid something, they were not very bright, because there's an awful lot of medical evidence in this case that shows that this surgery did not come from this automobile collision. And even the Plaintiff, at the time she gave her history, didn't relate it.

---

[1] The record reflects that the parties and trial court agreed to conduct closing arguments after the charge to the jury.

Endsley did not object to this statement, and at the conclusion of the closing arguments, the trial court continued its charge to the jury. Then, after the jurors had been dismissed to deliberate, but just before they returned to the courtroom to read the verdict, Endsley's counsel put the following on the record:

> Your Honor, at some point I wanted to put on the record what I had said before we did the charge about the charging on the workers' compensation lien. And I wanted to put an objection to that being included in the charge. . . . We did object and ask you to exclude any reference to the workers' compensation lien on the grounds that it did inject the collateral source, and we still except that the Court included that in its charge. . . . And, Judge, that was overruled, I believe.

The trial court confirmed that Endsley's objection had indeed been overruled and, thereafter, the jury returned a verdict in favor of Mason and GEC, upon which the court entered judgment. This appeal follows the denial of Endsley's motion for new trial.

1. First, Endsley argues that the trial court erred in its initial decision to allow UHG to actively participate at trial as a party after intervening in the case rather than bifurcating the trial. We agree that, under the particular facts of *this case*, the trial

12

court abused its discretion in not initially choosing to bifurcate the trial.[2] However, for the reasons discussed in Division 2 *infra*, the error was ultimately harmless.

At the outset, we note that OCGA § 34-9-11.1 provides, in relevant part, that when a third-party causes an employee's injury or death, and the liability of the employer has been fully or partially paid, the employer or the employer's insurer "shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery."[3] And to protect this interest, the employer or the employer's insurer "may intervene in any action to protect and enforce such lien."[4] But the recovery of the employer or employer's insurer is

> limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under

---

[2] *See, e.g.*, *Krayev v. Johnson*, 327 Ga. App. 213, 221 (2) (757 SE2d 872) (2014) ("[T]he decision whether to bifurcate a trial is within the discretion of the trial court."); *Wheels & Brakes, Inc. v. Capital Ford Truck Sales, Inc.*, 167 Ga. App. 532, 533-34 (1) (307 SE2d 13) (1983) ("The court has . . . discretion regarding whether to order a bifurcated trial for trying the issues of liability and damages.").

[3] OCGA § 34-9-11.1 (b).

[4] *Id.*

13

this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.[5]

If the injured employee fails to bring suit against the third-party within one year, OCGA § 34-9-11.1 (c) permits the employer or such employer's insurer to "assert the employee's cause of action in tort, either in its own name or in the name of the employee." The employee must be given notice if the employer or employer's insurer files suit, and the employee has the right to intervene.[6] Additionally, if the employee files suit against the third-party more than one year after the date of the injury, the employee must give notice to the employer or its insurer, and "the employer or its insurer . . . have a right to intervene."[7] Regardless, "if the employer or insurer recovers more than the extent of its lien, then the amount in excess thereof shall be paid over to the employee."[8]

---

[5] *Id.*

[6] OCGA § 34-9-11.1 (c).

[7] *Id.*

[8] *Id.*

As we have previously explained, the workers' compensation statute is in derogation of the common law and, as a result, it must be strictly construed.[9] Thus, any claim by an employer or its insurer "asserting subrogation rights against a third-party tortfeasor to the extent of workers' compensation payments made to the employee arises solely by operation of statute."[10] An employer or employer's insurer's right to seek subrogation, then, is not absolute.[11]

---

[9] *Schecter v. Auto-Owners Ins. Co.*, 335 Ga. App. 30, 34 (779 SE2d 69) (2015); *see Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga. App. 866, 867 (1) (570 SE2d 60) (2002) ("The General Assembly through OCGA § 34-9-11.1 creates a statutory subrogation lien in derogation of common law in the employer or workers' compensation insurer against any third-party tortfeasor, causing the employee's injury or recovery."); *Coker v. Deep S. Surplus of Ga., Inc.*, 258 Ga. App. 755, 756 (574 SE2d 815) (2002) ("Because the Workers' Compensation Act is in derogation of common law, its provisions must be strictly construed.").

[10] *Schecter*, 335 Ga. App. at 34 (punctuation omitted); *accord Canal Ins. Co.*, 256 Ga. App. at 867 (1); *Ga. Star Plumbing v. Bowen*, 225 Ga. App. 379, 381-82 (484 SE2d 26) (1997); *see also K-Mart Apparel Corp. v. Temples*, 260 Ga. 871, 873 (1) (401 SE2d 5) (1991) ("[A]ny subrogation claim which an insurer under the Georgia Workers' Compensation Act may have against a third-party tortfeasor who has caused the death or disability of an employee arises solely by operation of statute." (punctuation omitted)).

[11] *Schecter*, 335 Ga. App. at 34; *see also Anthem Cas. Ins. Co. v. Murray*, 246 Ga. App. 778, 782 (2) (542 SE2d 171) (2000) ("The right of an employer or insurer to seek subrogation under OCGA § 34-9-11.1 is not absolute."); *N. Bros. Co. v. Thomas*, 236 Ga. App. 839, 839-40 (513 SE2d 251) (1999) ("OCGA § 34-9-11.1, which provides a limited right of subrogation to workers' compensation providers, was enacted in 1995. No subrogation thereunder could occur unless the injured

15

Nevertheless, we have also held in the context of workers' compensation subrogation that "[i]ntervention under OCGA § 34-9-11.1 gives the intervenors rights against the defendants and the plaintiffs which are analogous to cross-claims."[12] Furthermore, we have suggested that "should an intervenor seek to litigate issues different from those already pending between the parties, *to claim additional damages*, or to raise additional defenses, . . . the intervenor's ability to raise these matters would be controlled by OCGA §§ 9-11-21 and 9-11-15 (c)."[13] And finally,

employee had been fully and completely compensated.").

[12] *Int'l Maint. Corp. v. Inland Paper Bd. & Packaging Inc.*, 256 Ga. App. 752, 755 (1) (569 SE2d 865) (2002); *accord Schecter*, 335 Ga. App. at 36.

[13] *AC Corp. v. Myree*, 221 Ga. App. 513, 515 (2) (471 SE2d 922) (1996) (emphasis supplied); *accord Schecter*, 335 Ga. App. at 36. *Cf. P.F. Moon & Co., Inc., v. Payne*, 256 Ga. App. 191, 193 (1) (568 SE2d 113) (2002) ("The issue remains . . . as to whether the [injured employee and his wife], as intervenors, can stand in [the employer's] shoes for purposes of amending the relief sought. Intervention is intended to allow the intervenor to protect its share of the recovery from another's litigation. But due to the unique situation presented under OCGA § 34-9-11.1, an employee . . . may be intervening not only to secure his interest in any recovery, but also to protect the proper prosecution of his own cause of action. And here, [the employee] seeks only to add an additional damage claim arising out of the same occurrence upon which [the employer's] complaint was based. Under these circumstances, we find that the claim for pain and suffering is a claim 'arising out of the conduct, transaction, or occurrence' set forth in the original complaint pursuant to OCGA § 9-11-15 (c) and may be treated as an amendment by a party plaintiff relating back to the date of the original complaint for statute of limitation purposes." (citations omitted)).

although an intervenor's "choice of pleadings or argument may on occasion conflict with a plaintiff's choice,"[14] we have noted that the trial court's "ability to referee such disagreements and conflicts will have to be decided on a case-by-case basis."[15]

Here, Endsley sought to recover "for her past and future actual damages and her pain and suffering." Importantly, because a workers' compensation subrogation lien is "available only against recovery for economic losses, the insurer must show that the employee has been fully and completely compensated as to each category of noneconomic loss for which the insurer seeks subrogation and that no portion of the lien is taken against recovery for *noneconomic* losses."[16] And in the case *sub judice*, there is no indication that there was any disagreement between Endsley and UHG as to how the case should proceed on the issue of recoverable damages to achieve full

---

[14] *Int'l Maint. Corp.*, 256 Ga. App. at 754 (1); *accord Schecter*, 335 Ga. App. at 36-37; *see also Austell Healthcare, Inc. v. Scott*, 308 Ga. App. 393, 396 (3) (707 SE2d 599) (2011) (quoting *Int'l Maint. Corp* to note that "[w]e have previously held that an intervenor may file 'whatever briefs, evidence, or other papers it chooses,' and also 'may choose discovery tactics different from those of a plaintiff . . . .'").

[15] *Int'l Maint. Corp.*, 256 Ga. App. at 755 (1); *accord Schecter*, 335 Ga. App. at 37.

[16] *Anthem Cas. Ins. Co.*, 246 Ga. App. at 780 (1).

and complete compensation.[17] In such a case, the most appropriate procedure is for the trial court to bifurcate the trial into two phases in order to exclude prejudicial references to collateral sources of recovery, *i.e.*, workers' compensation benefits.[18] Thus, in failing to bifurcate the trial in this particular case, the trial court abused its discretion.[19]

---

[17] *Cf. Schecter*, 335 Ga. App. at 31-32 (noting that after workers' compensation carrier successfully intervened in action, plaintiff moved to set aside and modify the order permitting the intervention and objected to "'the request for bifurcated trials and [plaintiff] to sue for intervenor's special damages' because [the plaintiff] did 'not intend to prove or offer specials in evidence at the trial and does not have any one [sic] to testify to same or the amounts'" (punctuation omitted)).

[18] *See Hammond v. Lee*, 244 Ga. App. 865, 866, 868 (4) (536 SE2d 231) (2000) (approving of trial court's decision to bifurcate trial into two phases; *see also Amalgamated Transit Union Local 1324 v. Roberts*, 263 Ga. 405, 408 (1) (434 SE2d 450) (1993) ("The collateral source rule is applicable in *tort* cases because collateral source evidence *cannot* be admitted to diminish the defendant's liability for the *actual harm* that was caused by his tort.").

[19] *See* OCGA § 9-11-42 (b) ("The court, in furtherance of convenience or to avoid prejudice, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue, or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."); *Parks v. Consolidated Freightways*, 187 Ga. App. 576, 577 (1) (370 SE2d 827) (1988) ("Severance is largely a matter of discretion for the trial judge, and absent clear and manifest abuse of that discretion, it will not be interfered with on appeal." (punctuation omitted)). *Cf. Cincinnati Ins. Co. v. Reybitz*, 205 Ga. App. 174, 177-78 (1) (a) (421 SE2d 767) (1992) (holding, in consolidated appeal brought by defendant-driver and her automobile insurance/personal injury protection benefits provider after jury verdict was returned in favor of plaintiff-pedestrian, that trial court erred in denying

In a trial that is bifurcated due to intervention of a workers' compensation carrier under OCGA § 9-34-11.1, the first phase consists of trying before the jury the plaintiff's claim against the defendant while omitting any reference to reimbursement for lost wages and medical expenses by the workers' compensation carrier, and utilizing a special-verdict form to itemize the recovery amounts awarded for the plaintiff's damages should the jury find the defendant liable.[20] Then, in the second

defendants' joint request to bifurcate trial because the failure to bifurcate admitted evidence of insurance coverage that was prejudicial to defendant-driver).

[20] *See Hammond*, 244 Ga. App. at 866 (noting that "[i]n phase one, [plaintiff's] claim against [third-party defendant] was tried before the jury under a ruling by the trial court to omit any reference to the fact that [plaintiff] had been reimbursed for lost wages and medical expenses by workers' compensation coverage. Utilizing a special verdict form, the jury found that [third-party defendant] was liable to [plaintiff] for damages resulting from the accident and awarded a verdict in favor of [plaintiff] in [specific] amounts" for medical expenses, past lost wages, future lost wages, and past and future pain and suffering); *see also N. Bros. Co.*, 236 Ga. App. at 841 ("Without such a special verdict form, appellate courts could not determine what portions of the award the jury applied toward economic and noneconomic losses, and, as a result, it would be impossible to determine whether a plaintiff had been fully compensated for his losses. The outcome in many such situations would be that a workers' compensation subrogation lien could not be enforced. It is the responsibility of the workers' compensation provider to protect its interest by intervention and special verdict requests." (citation omitted)); *Bartow Cty. Bd. of Educ. v. Ray*, 229 Ga. App. 333, 334-35 (494 SE2d 29) (1997) ("The statute prescribes no method by which an employer can establish that a workers' compensation recipient has been fully and completely compensated by a recovery from a third-party tortfeasor. . . . [U]tilization of a special verdict form may be the most practical solution. . . . OCGA § 34-9-11.1 does not require use of a special verdict form, but its use would have given to the

19

phase of the trial, the issue to be decided is whether the workers' compensation carrier is entitled to a subrogation lien against the plaintiff's recovery made in phase one.[21] To accomplish this, in the second phase, the workers' compensation carrier must show "without regard to the tort principles applied in [the plaintiff's] claim against [the third-party defendant], that [the plaintiff was] . . . 'fully and completely compensated[ ]' within the meaning of OCGA § 34-9-11.1 (b), for all of her economic and noneconomic losses incurred as a result of the injury."[22] As we have previously noted, "either by the agreement of the parties or by waiver in failing to timely object, the trial court can submit the issue of full and complete compensation to the jury to render an advisory finding of fact."[23] However, under OCGA § 34-9-

---

employer the answer it is now impossible to ascertain."); *Dep't of Admin. Srvs. v. Brown*, 219 Ga. App. 27, 28 (464 SE2d 7) (1995) (suggesting that use of a special verdict form serves the interests of intervening workers' compensation carriers).

[21] *See Hammond*, 244 Ga. App. at 866 (noting that "[i]n phase two, the issue was whether [the workers' compensation carrier] was entitled to a subrogation lien pursuant to OCGA § 34-9-11.1 (b) against the amounts recovered by [plaintiff] in phase one").

[22] *Id.* at 868 (4); *see also N. Bros. Co.*, 236 Ga. App. at 841 ("Under the express language of OCGA § 34-9-11.1 (b), no subrogation claim can be recovered where there has not been full compensation for the employee's injuries.").

[23] *Canal Ins. Co.*, 256 Ga. App. at 871 (1).

11.1, "the legal duty to make the determination that the employee has been made whole still remains with the trial court, even if it uses a jury to advise it in reaching such determination."[24]

In denying Endsley's request to bifurcate the trial in this case, the trial court relied upon this Court's decision in *Andrews v. Ford Motor Company,*[25] in which we vacated a trial court's order granting an insurance company's motion to intervene under OCGA § 9-11-24 (a) (2) in a product-liability action when the court conditioned the intervention such that the insurance company "would not be allowed to participate as a party during the main action"; "would not be allowed to have its name added to the caption of the case"; and "none of its claims would be addressed by the court until after the court had resolved the claims presented in the main

---

[24] *Id.*; *see also id.* at 872-73 (1) ("The trial court alone must determine if the employee has been fully and completely compensated; neither party has a right to a jury determination of whether the injured employee has been fully and completely compensated under subsection (b)."); *Liberty Mut. Ins. Co. v. Johnson*, 244 Ga. App. 338, 340 (2) (535 SE2d 511) (2000) ("[I]n the absence of a right to a jury trial on [the] issue [of full and complete compensation], the question is one of fact for the trial court."); *Anthem Cas. Ins. Co.*, 246 Ga. App. at 780 (1) ("The insurer bears the burden of proving that the insured has been [fully and completely] compensated, and whether the insurer has carried that burden is a question for the trial court.").

[25] 310 Ga. App. 449 (713 SE2d 474) (2011) (physical precedent only as to Division 3).

action."[26] Specifically, we concluded in *Andrews* that although the trial court's order purported to grant the insurance company the right to intervene, it

> denie[d] [the company] the status necessary to protect any interest it may have—that of a party—and the litigation tools necessary to participate in the case as an intervenor so that it may carry out the purpose of intervention, that is, to protect whatever rights it may have or whatever claims it may seek to interpose *during* the pending litigation.[27]

However, setting aside the fact that the intervention in *Andrews* was made under an entirely different statute, the relevant division in this opinion is not binding precedent because one of the three judges participating in that case (Judge Doyle) concurred in the judgment only as to that division.[28] Moreover, even if *Andrews* were binding

---

[26] *Id.* at 453 (3).

[27] *Id.*

[28] *See* COURT OF APPEALS RULE 33 (a) ("If an appeal is decided by a Division, a judgment in which all three judges fully concur is a binding precedent; provided, however, an opinion is physical precedent only with respect to any Division of the opinion for which there is a concurrence in the judgment only or a special concurrence without a statement of agreement with all that is said."). *But see Muldrow v. State*, 322 Ga. App. 190, 194 (3) n.29 (744 SE2d 413) (2013) ("This is not to say, however, that a party on appeal should shy away from citing physical precedent as persuasive authority. Indeed, some of the judges on this Court are of the view that our physical-precedent cases should be afforded greater consideration than decisions from appellate courts in other jurisdictions. Nevertheless, it is crucial that litigants explicitly designate physical precedent as such, and thoroughly explain why

precedent, nothing in that opinion explicitly purports to prohibit a trial court from bifurcating a trial in circumstances similar to those presented in the case *sub judice*. And while there may be some degree of tension between *Andrews* and cases involving bifurcation in the workers' compensation context, we need not resolve that tension today.

Accordingly, the trial court abused its discretion in failing to bifurcate this case, which, notwithstanding the stipulation ultimately reached between Endsley and UHC, resulted in comments and instructions throughout the trial that referred to the collateral source of workers' compensation benefits. However, for the reasons set forth *infra* in Division 2, the trial court's error in refusing to bifurcate does not require reversal.

2. Next, in two separate enumerations of error, Endsley argues that after accepting the stipulation with UHG and deciding that there was no longer a need for UHG to participate at trial, the trial court further erred in giving certain instructions to the jury. Specifically, Endsley maintains that the court erred in instructing the jury that UHG had paid benefits to Endsley, giving it a lien against any recovery, and had done so as a result of the wreck. She further contends that the court erred in

this Court should adopt the reasoning from that particular opinion.").

instructing the jury that UHG's workers' compensation lien was "evidence about the presence or absence of insurance or benefits." But pretermitting whether Endsley acquiesced to the first instruction by failing to move for a mistrial after the trial court accepted the stipulation and, instead, agreed that the court could instruct the jury as to same,[29] we find any error by the trial court's instructions harmless.

---

[29] *See Booker v. Older Ams. Council of Middle Ga., Inc.*, 278 Ga. App. 407, 409 (1) (629 SE2d 69) (2006) ("[Appellant] made no objection to the trial court's instruction as given and did not move for a mistrial; he acquiesced to the trial court's ruling. Thus, this allegation of error presents nothing for review."); *Carriage Hills Assocs., Inc. v. Mun. Elec. Auth.*, 264 Ga. App. 192, 194 (4) (590 SE2d 156) (2003) (rejecting argument that trial court erred in denying motion for mistrial during a heated exchange between the court and counsel when "appellants acquiesced and did not renew their motion for mistrial after the trial court gave the curative instruction requested by appellants").We also note that Endsley's brief mentions the comments that appellee's counsel made about the workers' compensation lien during arguments to the jury. But in addition to failing to enumerate these instances as error, Endsley failed to object to any of these references at trial. *See Kelley v. Purcell*, 301 Ga. App. 88, 91 (686 SE2d 879) (2009) (holding that despite defense attorney's violation of collateral source rule during closing arguments, issue was waived for appeal by failure to object at the time argument was made); *see also Stolte v. Fagan*, 291 Ga. 477, 482 (2) (b) (731 SE2d 653) (2012) ("The proper time to object to improper argument is when it occurs. We have held that such objections must be made at the time the offending remarks are made, rather than at the conclusion of the argument." (citations and punctuation omitted)); *Chhina Family P'ship, L.P. v. S-K Grp. of Motels, Inc.*, 275 Ga. App. 811, 811-12 (1) (622 SE2d 40) ("Having failed to enumerate as error that the evidence did not support reformation, any such claim is deemed abandoned.").

24

We have previously rejected outright the argument that erroneous admission or reference to collateral sources is always harmful.[30] Indeed, it is well established that, generally, when the error in the admission or exclusion of evidence or in the giving or not giving of jury instructions relates only to the issue of damages, and the jury finds that the defendant is not liable, the error is harmless because it does not affect the verdict.[31] To that end, we have repeatedly held that when collateral sources

[30] *See Willard v. Wilburn*, 203 Ga. App. 393, 394 (2) (416 SE2d 798) (1992) (acknowledging that the Supreme Court of Georgia "undoubtedly was aware of our treatment of this issue before its decision in" *Denton v. Con-Way S. Express, Inc.*, 261 Ga. 41 (402 SE2d 269) (1991), in which the Supreme Court held that statute authorizing admission of evidence of collateral source payments was unconstitutional, and explaining that "without a specific holding to the contrary we will not interpret [the Supreme Court's] failure to address this issue as a rejection of the harmless error rule"), *cert. denied* (Ga. May 8, 1992). *Cf. Harper v. Barge Air Conditioning, Inc.*, 313 Ga. App. 474, 479-80 (2) (722 SE2d 84) (2011) (addressing argument that trial court erred in denying motion for mistrial after defense counsel referred to workers' compensation benefits during voir dire in order to "avoid any possible repetition at retrial," and holding that the reference was "inherently prejudicial" and that the failure to grant motion for a new panel or provide a curative instruction "further compounded the error discussed" in prior division of opinion in which we held that reversal was necessary due to a separate error during voir dire).

[31] *See, e.g.*, *Henry v. Watkins*, 219 Ga. App. 80, 81 (2) (464 SE2d 215) (1995), *cert. denied* (Ga. Feb. 9, 1996); *Ratliff v. CSX Transp., Inc.*, 219 Ga. App. 53, 56 (5) (464 SE2d 1) (1995), *cert. denied* (Ga. Feb. 9, 1996); *Bean v. Landers*, 215 Ga. App. 366, 368 (2) (450 SE2d 699) (1994), *cert. denied* (Ga. Feb. 24, 1995); *Dietz v. Becker*, 209 Ga. App. 678, 681 (3) (434 SE2d 103) (1993), *cert. denied* (Ga. Oct. 29, 1993); *Willard*, 203 Ga. App. at 394 (2), *cert. denied* (Ga. May 8, 1992); *Pouncey v. Adams*, 206 Ga. App. 126, 127 (1) (424 SE2d 376) (1992); *Barnes v. Wall*, 201 Ga.

25

such as insurance and disability benefits are referenced, the error in doing so is harmless when the jury renders a verdict finding that the defendant is not liable to the plaintiff.[32] Indeed, our own Supreme Court has acknowledged in *Denton v. Con-Way*

App. 228, 230 (3) (411 SE2d 270) (1991) (physical precedent only), *cert. denied* (Ga. Oct. 18, 1991); *U.S. Indus., Inc. v. Austin*, 197 Ga. App. 74, 75 (2) (397 SE2d 469) (1990), *cert. denied* (Ga. Oct. 24, 1990); *Jet Air, Inc. v. Epps Air Serv., Inc.*, 194 Ga. App. 829, 831 (3) (392 SE2d 245) (1990), *cert. denied* (Ga. May 16, 1990); *Steverson v. Eason*, 194 Ga. App. 273, 273 (1) (390 SE2d 424) (1990); *Malloy v. Elmore*, 191 Ga. App. 564, 564 (382 SE2d 395) (1989); *Whelchel v. Thomas Ford Tractor, Inc.*, 190 Ga. App. 156, 156 (1) (378 SE2d 510) (1989); *Maloy v. Dixon*, 127 Ga. App. 151, 155 (2) (b) (193 SE2d 19) (1972); *Davis v. Atlanta Coca Cola Bottling Co.*, 119 Ga. App. 422, 423 (3) (167 SE2d 231) (1969), *cert. denied* (Ga. April 24, 1969); *see also* OCGA § 9-11-61 ("No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); OCGA § 24-1-103 (b) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .").

[32] *See Henry*, 219 Ga. App. at 80-81 (holding that defendant's reference to HMO provider by name was harmless in light of verdict in favor of defendant on issue of liability); *Willard*, 203 Ga. App. at 394 (2) (holding that admission of evidence of plaintiff's health insurance went to the issue of special damages and was harmless because jury "determined the question of liability in favor of the defendant"); *Austin*, 197 Ga. App. at 74 (holding that admission of evidence of and charge to jury regarding workers' compensation benefits did not warrant the grant of a new trial because "the giving of a charge or the admission or exclusion of evidence, which go only to the matters of damages or the measure of damages, are harmless and afford no ground for reversal [when] a verdict was returned in favor of the defendant"

*Southern Express, Inc.*[33] that, at least insofar as liability insurance of a defendant is concerned, the "rationale" for not disclosing same to a jury is due chiefly to "the assumption that a knowledge of the fact of insurance against liability will motivate the jury to be *reckless in awarding damages to be paid . . . .*"[34] And, as we have previously recognized, when our Supreme Court decided *Denton*, it was "undoubtedly was aware of our treatment of this issue [(*i.e.*, our application of the harmless error

---

(punctuation omitted)); *Malloy*, 191 Ga. App. at 564 (holding that admission of evidence of and charge to jury regarding disability benefits was harmless error in light of verdict in favor of defendant on issue of liability); *Whelchel*, 190 Ga. App. at 156 (1) (holding that the admission of evidence of and charge to jury regarding social security and workers' compensation benefits was harmless error in light of verdict in favor of defendant on issue of liability); *Davis*, 119 Ga. App. at 423 (3) (holding that admission of evidence of disability benefits related to damages was harmless because "the verdict was based on a determination that the defendant was not liable"). *Cf. Anepohl v. Ferber*, 202 Ga. App. 552, 552-53 (1), 568-69 (2) (415 SE2d 9) (1992) (reversing when plaintiff was granted a directed verdict on issue of defendant's liability, but jury awarded no damages); *Wilhelm v. Atlanta Gas Light Co.*, 190 Ga. App. 869 (380 SE2d 276) (1989) (reversing "[i]n view of the probability that the improper admission of evidence regarding appellant's collateral benefits directly influenced the jury into rendering a verdict that appellant *recover nothing* from appellee . . ." (emphasis supplied)); *Moore v. Price*, 158 Ga. App. 566, 566-68 (1), 568-69 (2) (281 SE2d 269) (1981) (reversing when jury found both defendant and plaintiff negligent but awarded no damages).

[33] 261 Ga. 41 (402 SE2d 269) (1991), *disapproved of on other grounds by Grissom v. Gleason*, 262 Ga. 374, 376 (2) (418 SE2d 27) (1992) ("We disapprove of *Denton v. Con-Way* to the extent that it suggests a new equal protection analysis.").

[34] *Id.* at 42 n.2 (emphasis supplied).

rule to the erroneous admission of collateral-source evidence)] before its decision,"[35] and "without a specific holding to the contrary we will not interpret [the Supreme Court's] failure to address this issue as a rejection of the harmless error rule."[36]

In support of her argument that reference to a collateral source "infects the question of liability," Endsley relies upon our decision in *Collins v. Davis*.[37] However, in reversing for a new trial in that case, we noted that the "evidence relating to negligence" was "highly disputed and uncertain" and, as a result, it was "impossible to say that the errors in admitting [the] insurance evidence did not affect

---

[35] *Willard*, 203 Ga. App. at 394 (2).

[36] *Id.*

[37] 186 Ga. App. 192 (366 SE2d 769) (1988). Endsley also cites to *Clemmons v. State*, 246 Ga. App. 643 (540 SE2d 623) (2000), for this proposition. But a review of *Clemmons* shows that it is inapposite to the facts of this case and stands for only general evidentiary principles regarding collateral-source evidence. In *Clemmons*, the plaintiff appealed a verdict in favor of the defense and argued that the trial court erred in excluding collateral source evidence that his "medical expenses were not completely covered by insurance in order to dispel what he speculated was the jury's 'reasonable surmise' that those expenses had already been paid." *Id.* at 645 (3). We held that because the plaintiff "failed to make the requisite threshold showing of relevance, the trial court did not err in denying his motion to introduce inherently prejudicial collateral source evidence." *Id*.

28

the verdict."[38] In *Collins*, the trial court permitted admission, over repeated strenuous objections and motion for mistrial, that the plaintiff had failed to file a claim with his no-fault insurer.[39] The defendant argued that this was relevant to the plaintiff's claim for lost wages.[40] But we explained that the "[f]ailure to file an insurance claim is not an admission that the party has no loss" and that such evidence "does not logically prove he had no lost wages, any more than filing a claim would prove he did have lost wages."[41] Indeed, in *Collins*, the evidence was disputed

> as to whether the lead car (in which the plaintiff . . . was a passenger) was at fault for stopping suddenly, whether other cars stopping in front of the lead car caused that car to stop, whether the brake lights of the lead car failed to operate or simply were not seen by defendant . . . in the

---

[38] *Collins*, 186 Ga. App. at 195 (1); *see also Getz Exterminators of Ga., Inc. v. Towe*, 193 Ga. App. 268, 271 (1) (387 SE2d 338) (1989) (noting that "[w]e reversed the verdict in *Collins* because under the 'highly disputed and uncertain nature of the evidence relating to negligence' it could not be said the verdict in favor of the defendant . . . was uninfluenced by evidence that the plaintiff had insurance" (citation omitted)).

[39] *Id.* at 192-93 (1).

[40] *Id*. at 193 (1).

[41] *Id.*

29

car behind; and whether [the defendant] might have been following too closely.[42]

Thus, all of the foregoing informed our conclusion that, "[b]y implying there was no loss, or that the party had a source of insurance therefore should not have sued (or should have been sued), it infects the question of liability."[43]

But here, as previously noted, negligence was *admitted* by Mason and GEC (*i.e.*, Mason and GEC admitted to breaching a duty of care owed to Endsley), leaving the jury to determine (1) the proximate cause of Endsley's injuries and, thus, whether Mason and GEC were liable, and (2) the monetary amount of damages *if* the jury determined that appellees were liable for same. Indeed, the trial court instructed that the jury's "duty [was] to determine the amount of damages, if any, *that were proximately caused* by the collision. The [p]laintiff must prove the [d]efendant's negligence was the proximate cause or one of the contributing causes entering into the proximate cause of her injury."[44] The court then later instructed that "[n]o [p]laintiff may recover from injuries or disability that are not connected with the act

---

[42] *Id*. at 192.

[43] *Id*. at 195 (1).

[44] (Emphasis supplied).

30

or omissions of the [d]efendants from whom a recovery is sought. There can be no recovery for any injury or disability that was not proximately caused by the incident in question." Further on, the court charged that

> [d]amages are given as pay for compensation for injury done. When the law requires one party to pay damages to another, it seeks to see that the damages awarded are fair to both parties. If you believe from a preponderance of the evidence that the [p]laintiff is entitled to recover, you should award to the [p]laintiff such sums as you believe are reasonable and just in this case. «**V3, T. 227**»

Thus, it is abundantly clear that liability remained an issue, and this was not strictly a trial regarding the *monetary* amount of damages to be awarded. And elsewhere, the trial court's instructions to the jury directed that beyond the determination of damages awarded, the jury would not address the intervenor's claims as to the workers' compensation subrogation lien.[45]

---

[45] *Cf. Wendlandt v. Shepherd Construction Co.*, 178 Ga. App. 153, 154-55 (342 SE2d 352) (1986) (holding that the denial of plaintiff's motion in limine and the erroneous admission of evidence as to plaintiff's use of a seatbelt were harmless error when trial court instructed jury that it should limit use of that evidence to the question of damages, and jury returned a verdict in favor of defense).

Finally, this was not a case in which it was impossible to tell the basis for the jury's decision in favor of the defendants by the verdict form.[46] Indeed, utilizing a special verdict form, the jury concluded that Mason and GEC were not liable and never reached the question of monetary damages. Accordingly, the jury never reached the issue of damages, rendering any error in the court's references to and instructions regarding the workers' compensation lien harmless.[47]

For all of the foregoing reasons, we affirm.

*Judgment affirmed. Phipps, P. J., and Peterson, J., concur.*

---

[46] *Cf. Allison v. Patel*, 211 Ga. App. 376, 382 (1) (438 SE2d 920) (1993) (holding that erroneous admission of collateral source evidence was not harmless because "the verdict was general, neither party having requested that liability and damages be separate items in the verdict, [and thus] we do not know for certain whether the jury found defendant not liable because of lack of negligence or lack of proximate cause, or even whether it found him such but that plaintiff had been fully compensated"); *Wages v. Sibran, Inc.*, 171 Ga. App. 14, 17 (3) (318 SE2d 679) (1984) (affirming trial court's entry of judgment on a verdict in favor of defendant when, notwithstanding erroneous jury instruction on damages, "the wording of the verdict itself demonstrates that it was not the result of the trial court's erroneous instruction regarding damages" because the jury found that the defendant was not liable); *Goins v. Glisson*, 163 Ga. App. 290, 292 (1) (292 SE2d 917) (1982) (reversing verdict entered on judgment in favor of defense after noting that the "error was prejudicial and reversible inasmuch as it is impossible to say the jury's verdict was unaffected thereby").

[47] *See supra* notes 31-32 & accompanying text.